EMMA C., by and through her guardian
ad litem, et al., Plaintiffs,

v.

Delaine EASTIN, et al., Defendants.

No. C 96–4179 TEH.

United States District Court,
N.D. California.

Oct. 17, 1997.

Daniel J. Lipton, Disability Rights Educ. & Defense Fund, Inc., Berkeley, CA, David R. Giles, East Palo Alto Community Law Project, Palo Alto, CA, Rony Sagy, San Francisco, CA, for Plaintiffs.

Urrea C. Jones, Martine Magana, Jones & Matson, Pasadena, CA, for Defendants.

## ORDER

HENDERSON, Chief Judge.

On August 4, 1997, a group of defendants in the above-captioned matter, comprised of California's Superintendent of Public Instruction Delaine Eastin, the California Department of Education ("CDE"), and several members of the California Board of Education (collectively referred to as the "State Defendants"), filed a motion to dismiss, or, in the alternative, for summary judgment, on a variety of grounds. This motion came before the Court for hearing on September 22, 1997. Having considered the written and oral arguments of the parties, the Court now issues the following Order.

### FACTUAL BACKGROUND

The eight named plaintiffs in this class action are school-aged children with disabilities who presently attend, or have in the past attended, schools in the Ravenswood City School District ("Ravenswood"). Plaintiffs allege that Ravenswood has failed not only to meet their individual educational needs, but has also failed to provide similarly-situated children within its jurisdiction a free appropriate public education ("FAPE"), as mandated by the Individuals with Disabilities Education Act[1] ("IDEA"), 20 U.S.C. § 1400 et seq., and various other state and federal laws. Plaintiffs accordingly filed this action on November 18, 1996, pursuant to the IDEA; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq.; 42 U.S.C. § 1983; and a variety of state law causes of action. In addition to the State Defendants, plaintiffs are proceeding against Ravenswood a number of Ravenswood offi-cials ("Ravenswood Defendants"). The plaintiff class seeks declaratory, injunctive, and compensatory relief.

The State Defendants now move to dismiss various aspects of plaintiffs' claims, or, in the alternative, move for summary judgment.

## DISCUSSION

**1. Motion to Dismiss, or for Summary Judgment, for Lack of Subject Matter Jurisdiction**

■ A plaintiff, before bringing suit under the IDEA, must first exhaust the administrative remedies provided by the act. *Doe v. Arizona Dept. of Educ.*, 111 F.3d 678, 680 (9th Cir.1997). This exhaustion requirement applies not only to a plaintiffs' IDEA claims, but also to any other federal claims seeking relief that would be available under the IDEA. 20 U.S.C. § 1415(f); *Charlie F. v. Board of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 992 (7th Cir.1996). Within the Ninth Circuit, moreover, the exhaustion requirement appears to be jurisdictional in nature. *See Dreher v. Amphitheater Unif. Sch. Dist.*, 22 F.3d 228, 231 (9th Cir.1994); *Hoeft v. Tucson Unif. Sch. Dist.*, 967 F.2d 1298, 1302 (9th Cir.1992); *but see Charlie F.*, 98 F.3d at 991 (holding that exhaustion can be waived, and thus is not jurisdictional).

■ In an Order filed July 10, 1997, the Court dismissed the entirety of plaintiffs' action against the Ravenswood defendants, finding that plaintiffs had failed to exhaust their administrative remedies. The State Defendants now seek dismissal on the same grounds. In their reply briefing, the State Defendants make it clear that they do not mean to reargue the issue of administrative exhaustion. Rather, the State Defendants argue that, if Ravenswood prevails in demonstrating that the Court lacks subject matter jurisdiction, this finding should also dictate a dismissal against the State Defendants.

The Court is in complete agreement with the State Defendants' "us too" argument.

---

1. The statutory scheme currently known as the IDEA has been known by a number of names and accompanying acronyms (e.g., EHA, EAH-CA) since it was enacted in 1975. In order to simplify the discussion, the Court will refer to the statute as the IDEA throughout this Order.

On October 1, 1997, however, the Court granted plaintiffs' motion for reconsideration, vacated its July 10, 1997 Order, and found that administrative exhaustion was excused on the facts of this case. *See* Order at 11 (filed Oct. 1, 1997). Accordingly, the State Defendants' motion to dismiss, or, in the alternative for summary judgment, for lack of subject matter jurisdiction is HEREBY DENIED.

### 2. Motion to Dismiss Compensatory Damages Claims under the IDEA and § 1983

■ The Court next addresses the State Defendants' motion to dismiss plaintiffs' prayer for compensatory damages, insofar as these damages might flow from an IDEA violation. The State Defendants argue that courts have limited monetary awards under the IDEA to reimbursement of out-of-pocket expenses and compensatory education—relief that can be characterized as "equitable." *See Burlington Sch. Comm. v. Department of Educ.*, 471 U.S. 359, 369–71, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985) (holding that IDEA permits retroactive reimbursement for out-of-pocket expenses where school district failed to provide appropriate education); *W.G. v. Board of Trustees of Target Range Sch. Dist.*, 960 F.2d 1479, 1485 (9th Cir.1992) ("Parents have an equitable right to reimbursement for the cost of providing an appropriate education where a school district has failed to offer a child a FAPE."); *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, 857–58 (11th Cir.1988) (upholding district court that had ordered school district to fund two additional years of "compensatory education"); *Miener v. Missouri*, 800 F.2d 749, 753–54 (8th Cir.1986) (compensatory education is permissible remedy under IDEA). Permitting monetary relief beyond these narrowly circumscribed "equitable" measures,

according to the State Defendants, would be inconsistent with Congress' intent in enacting the IDEA.

Whether general compensatory damages are available under the IDEA is, surprisingly, a question that has not been settled. *Compare W.B. v. Matula*, 67 F.3d 484, 494–95 (3d Cir.1995) (holding that damages are available in § 1983 suits brought to enforce IDEA rights and suggesting in dicta that damages would also be available under the IDEA directly) *with Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 980 F.2d 382, 386–87 (6th Cir.1992) (holding that damages are unavailable under the IDEA's predecessor and thus also unavailable in a § 1983 suit seeking to enforce IDEA rights). The question is further complicated by the analytically separate question of whether compensatory damages are available in an action brought under 42 U.S.C. § 1983 to enforce IDEA rights.

With respect to the availability of damages under the IDEA itself, the Court begins with the language of the statute, which authorizes a court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2).[2] Despite the facially expansive character of this language, a long line of cases, tracing its origins to the Seventh Circuit's opinion in *Anderson v. Thompson*, 658 F.2d 1205, 1206 (7th Cir.1981), holds that the statute nevertheless bars compensatory damages. *See, e.g., Crocker*, 980 F.2d at 386–87; *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir.1983); *Powell v. Defore*, 699 F.2d 1078, 1081 (11th Cir.1983); *Miener v. Missouri*, 673 F.2d 969, 979 (8th Cir.1982). Of particular importance to this Court is the Ninth Circuit's adoption of *Anderson*'s rationale and holding. *Mountain View–Los Altos Union H.S. Sch. Dist. v. Sharron B.H.*, 709 F.2d 28, 30 (9th Cir.1983).

---

**2.** Section 1415(e)(2) provides, in its entirety:

Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State

court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

Cases decided since *Anderson* and *Sharron B.H.*, however, have called *Anderson* and its rationale into question.[3] *See generally,* Note, Kara W. Edmunds, *Implying Damages Under the Individuals with Disabilities Education Act:* Franklin v. Gwinnett County Public Schools *Adds New Fuel to the Argument,* 27 GA.L.REV. 789 (1993) [hereinafter *Implying Damages* ]. In 1992, the Supreme Court decided *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), holding that Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.,* supports a claim for monetary damages. Although the IDEA is similar in many ways to Title IX, it is *Franklin's* general approach to the statutory interpretation of remedial provisions that is relevant to the question of monetary relief under the IDEA. In *Franklin,* the Supreme Court reaffirmed the longstanding rule of American jurisprudence that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* at 66, 112 S.Ct. at 1033 (quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). "The general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Id.* at 70–71, 112 S.Ct. at 1035.

Whatever the merits of the Seventh Circuit's analysis in *Anderson,* it is plainly inconsistent with the approach laid out by the Supreme Court eleven years later in *Franklin.* Rather than beginning with a presumption in favor of all remedies, the Seventh Circuit in *Anderson* began with a presumption *against* monetary relief. From there, the court looked to the statutory language and concluded that it revealed no affirmative intent on the part of Congress to permit compensatory relief. *Anderson,* 658 F.2d at 1210–11. It then turned to the legislative history and found it to be "silent on the question of whether a damage remedy was intended." *Id.* at 1211. Finally, the appellate panel took policy considerations into account, and concluded that "a general damage remedy would hinder rather than help the very children for whose benefit the statute was enacted." *Id.* at 1213.

An analysis that begins from a presumption in favor of all remedies leads to a different conclusion. Beginning with the statutory language, the Court can discern no "clear direction" that would overcome the presumption in favor of all appropriate remedies. The most that can be said is that the statute is silent with respect to whether it is meant to include compensatory damages. As the Supreme Court noted in *Franklin,* "[t]hat a statute does not authorize the remedy at issue in so many words is no more significant than the fact that it does not in terms authorize execution to issue on a judgment." *Id.* at 68, 112 S.Ct. at 1034 (internal quotes omitted).

Turning to the legislative history, the Court concludes that the Seventh Circuit's summary of that history is thoughtful and comprehensive. Nevertheless, after *Franklin,* the very same legislative history compels the opposite legal conclusion. The IDEA was enacted in 1975, only a few years after Title IX. In considering the legal context of that time, the Supreme Court in *Franklin* stated that "[i]n the years before and after Congress enacted [Title IX], the Court followed a common-law tradition and regarded the denial of a remedy as the exception rather than the rule." *Id.* at 71, 112 S.Ct. at 1036. Congress, by legislating in that legal context, presumably understood that clear statutory direction would be required if the availability of monetary relief was to be restricted.[4] *Id.* at 72, 112 S.Ct. at 1036. As

3. *Anderson 's* particular holding—that reimbursement for out-of-pocket educational expenses is not available to a prevailing party under the IDEA—was effectively overruled by the Supreme Court in *Burlington,* 471 U.S. at 369, 105 S.Ct. at 2002. Because the Supreme Court ruled that such reimbursement did not constitute "damages," however, *Burlington* left intact the general holding of *Anderson*—that damages are not available under the IDEA. It is this facet of *Anderson* that will be addressed in the balance of the Court's Order.

4. The Court also notes that the legislative histories accompanying subsequent amendments to the IDEA also disclose no congressional inten-

the Seventh Circuit discovered in *Anderson*, the legislative history is silent with respect to the propriety of monetary relief. This congressional silence ends the judicial inquiry: "[I]f a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order any appropriate relief." *Id.* at 69, 112 S.Ct. at 1034. Accordingly, the Court concludes that neither the Seventh Circuit's reasoning in *Anderson*, nor the Ninth Circuit's adoption of it in *Sharron B.H.*, remains persuasive in the wake of *Franklin*. The Court instead joins the Third Circuit in concluding that compensatory damages are available under the IDEA. *Accord W.B. v. Matula*, 67 F.3d at 494.

From this conclusion, it is a small step to conclude that monetary relief is also available in a § 1983 suit aimed at enforcing rights protected by the IDEA.[5] Congress has specifically authorized § 1983 actions predicated on the IDEA. *See id.* at 493–94 (explaining legislative history behind 20 U.S.C. § 1415(f)). Section 1983, in turn, authorizes actions at law or in equity, and there is no legislative history that suggests Congress meant to limit the traditional scope of § 1983 remedies in the IDEA context. *See id.* at 494–95. Accordingly, the Court concludes that compensatory damages are available not only in direct IDEA actions, but also in § 1983 suits predicated on IDEA violations. *Accord Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 284 (3d Cir.1996); *Matula*, 67 F.3d at 495; *Walker v. District of Columbia*, 969 F.Supp. 794, 796–97 (D.D.C. 1997).

The Court, however, is not unmindful of the policy repercussions that might attend the availability of monetary relief in IDEA cases. As the Seventh Circuit pointed out in *Anderson*, the possibility of compensatory damages may discourage educators from implementing innovative programs and may expose school districts to additional financial liabilities that they can ill afford.[6] 658 F.2d at 1212–13. As a result, the Court takes seriously the Third Circuit's admonition:

> We caution that in fashioning a remedy for an IDEA violation, a district court may wish to order educational services, such as compensatory education beyond a child's age of eligibility, or reimbursement for providing at private expense what should have been offered by the school, rather than compensatory damages for generalized pain and suffering.

*Matula*, 67 F.3d at 495. While the Court need not grapple with the practical implications of this admonition in connection with the instant motion to dismiss, the parties would do well to begin considering these issues in advance of trial.

For the foregoing reasons, the State Defendants' motion to dismiss plaintiffs' IDEA and § 1983 claims, insofar as those claims seek compensatory damages, is HEREBY DENIED.

### 3. Motion to dismiss on the basis of "Eleventh Amendment immunity"

#### a. General principles

The State Defendants also seek outright dismissal of plaintiffs' § 1983 and pendant state law claims. To wage this campaign,

---

tion to limit the availability of compensatory damages. *See, e.g.*, Individuals with Disabilities Education Act Amendments of 1997, Pub.L. No. 105–17, 111 Stat. 37 (1997) (legislative history reprinted in 1997 U.S.C.A.A.N. 78); Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, 104 Stat. 1103 (1990) (legislative history reprinted in 1990 U.S.C.A.A.N. 1723); The Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796 (1986) (legislative history reprinted in 1986 U.S.C.A.A.N. 1798).

**5.** A number of courts have proceeded directly from a conclusion that the IDEA precludes an award of compensatory damages to the same

conclusion for § 1983 suits premised on IDEA violations. *See, e.g., Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir.1996); *Crocker*, 980 F.2d at 387; *Sellers v. School Bd. of the City of Manassas*, 960 F.Supp. 1006, 1012 (E.D.Va. 1997); *Barnett v. Fairfax County Sch. Bd.*, 721 F.Supp. 755, 756–57 (E.D.Va.1989). Having concluded, however, that compensatory damages are available under the IDEA, the Court cannot rely on the analyses set forth in these opinions.

**6.** The Court hastens to add that the availability of compensatory damages also may have certain salutory effects. *See Implying Damages*, 27 Ga. L.Rev. at 802–08.

they have assembled a motley assortment of arguments, all nominally united under an Eleventh Amendment banner. With some effort, the Court has been able to divide defendants' troops into two more jurisprudentially recognizable camps.

■ The scope of § 1983 and the scope of the Eleventh Amendment are separate issues. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 2309–10, 105 L.Ed.2d 45 (1989). With respect to the former, it is now well-settled that a state is not a "person" within the meaning of 42 U.S.C. § 1983, and thus may not properly be named as a defendant in a § 1983 action. *Id.* at 64, 109 S.Ct. at 2308–09. This principle so-extends to state agencies, and to state officers named in their official capacities. *Id.* at 71, 109 S.Ct. at 2312. There is, however, one significant exception to the general rule: thanks to the legal fiction established by the Supreme Court in *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908), a state official is a "person" within the meaning of § 1983 if she is sued for injunctive relief in her official capacity. *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10.

■ The Eleventh Amendment, on the other hand, embodies a more general principle, one that extends well beyond the boundaries of § 1983. As a general rule, the Eleventh Amendment bars all suits brought in federal court against states and their agencies in the absence of consent by the state or express abrogation by Congress within its authority. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 53–54, 116 S.Ct. 1114, 1122–23, 134 L.Ed.2d 252 (1996). Neither party suggests that California has consented

to the instant suit, and it is well-settled that § 1983 itself did not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Despite the lack of state consent and congressional abrogation, however, the *Ex parte Young* doctrine lifts the Eleventh Amendment's jurisdictional bar for federal suits seeking prospective relief against state officials acting in their official capacities. *See Idaho v. Coeur d'Alene Tribe of Idaho,* —— U.S. ——, ——, 117 S.Ct. 2028, 2046, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring);[7] *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–03, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984). The *Ex parte Young* exception applies only where the state officials are allegedly violating *federal* law;[8] it does not reach suits seeking relief against state officials for violations of *state* law. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911.

With these general principles in mind, the Court now tests the specific claims brought by plaintiffs against the State Defendants.

### b. IDEA, ADA, and Section 504 claims

■ First, the Court evaluates plaintiffs' claims under the IDEA, the ADA, and Section 504 of the Rehabilitation Act.[9] Each of these statutes includes an express, unequivocal abrogation of Eleventh Amendment immunity. *See* 20 U.S.C. § 1403 (IDEA); 42 U.S.C. § 12202(ADA); 42 U.S.C. § 2000d–7(a)(1) (Section 504). At one time, this express statutory language would have ended the inquiry. After the Supreme Court opinion in *Seminole Tribe,* however, a court must go on to ask "whether Congress has acted

---

7. J. Kennedy's opinion in *Coeur d'Alene* suggests a sea-change in the application of the *Ex parte Young* doctrine, announcing a case-by-case balancing analysis that must precede the doctrine's use. *Coeur d'Alene,* —— U.S. at ——, 117 S.Ct. at 2038. J. O'Connor's concurrence, however, rejects this innovation and appears to be the controlling view. *See id.,* at ——, 117 S.Ct. at 2046 (O'Connor, J., concurring) (describing and rejecting balancing approach); *id.,* at ——, 117 S.Ct. at 2048 (Souter, J., dissenting) (noting that J. O'Connor's view is controlling). Accordingly, the Court here does not employ the balancing approach announced by J. Kennedy in *Coeur d'Alene.*

8. The *Ex parte Young* exception to Eleventh Amendment immunity applies to violations of both federal statutory and constitutional rights. *Natural Resources Defense Council v. California Dept. of Trans.,* 96 F.3d 420, 422 (9th Cir.1996).

9. Although the State Defendants have not challenged these claims on Eleventh Amendment grounds, the Court is nevertheless under an independent obligation to assure itself of its own subject matter jurisdiction. *See Morongo Band of Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1380 (9th Cir.1988).

pursuant to a valid exercise of power." *Seminole Tribe*, 517 U.S. at 54, 116 S.Ct. at 1123. With respect to this question, the Court concludes that these abrogations were enacted pursuant to Congress' powers under § 5 of the Fourteenth Amendment, and thus were enacted pursuant to a valid exercise of power. *See Seminole Tribe*, 517 U.S. at 58, 116 S.Ct. at 1125 (§ 5 of the Fourteenth Amendment empowers Congress to abrogate state immunity); *Clark v. California*, 123 F.3d 1267, 1270 (9th Cir.1997) (abrogation under ADA and Section 504 is valid pursuant to § 5 of the Fourteenth Amendment); *Peter v. Johnson*, 958 F.Supp. 1383, 1394 (D.Minn. 1997) (abrogation under IDEA is valid pursuant to § 5 of the Fourteenth Amendment). Accordingly, plaintiffs' claims under the IDEA, the ADA, and Section 504 may be maintained against the State Defendants without running afoul of the Eleventh Amendment.[10]

### c. § 1983 claims

▮▮▮ Plaintiffs are also proceeding against each of the State Defendants under § 1983, alleging violations of the Constitution, the IDEA, the ADA, and Section 504.[11] The § 1983 cause of action, however, must be dismissed in its entirety against the CDE, as it is a state agency and thus cloaked by Eleventh Amendment immunity. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993) (*Ex parte Young* doctrine "has no application in suits against the States and their agencies"). With respect to plaintiffs' § 1983 claim against the remaining State Defendants, all state officials, the Court holds that, insofar as plaintiffs' § 1983 claim seeks retrospective relief,

it must be dismissed because state officials in their official capacities are not "persons" within the meaning of § 1983. *See Will*, 491 U.S. at 71, 109 S.Ct. at 2312. Section 1983, however, permits plaintiffs to maintain their claim against the named state officials official capacity insofar as it seeks prospective injunctive relief. *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10 (a state official acting in her official capacity is a "person" under § 1983). The Eleventh Amendment, moreover, does not bar this aspect of plaintiffs' § 1983 claim. *See Coeur d'Alene*, —— U.S. at ——––——, 117 S.Ct. at 2045–47 (the *Ex parte Young* exception is available where a plaintiff alleges an ongoing violation of federal law and seeks only prospective relief). Plaintiffs, furthermore may proceed with their § 1983 claim against the named state officials in their *individual* capacities for both retrospective and prospective relief. *See Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits...."); *Pena v. Gardner*, 976 F.2d 469, 472–73 (9th Cir.1992).

### d. Pendant state law claims

▮▮▮ "A state law claim pendant to a federal law claim that survives eleventh amendment analysis must itself be subjected to eleventh amendment scrutiny." *Id.* at 473. Here, plaintiff have asserted a number of state law claims against the State Defendants, as set forth in their Fourth and Fifth Causes of Action.[12] As against the CDE and the state officials named in their official capacities, these claims cannot survive Eleventh Amendment scrutiny. *See Pennhurst*, 465 U.S. at 106, 104 S.Ct. at 911. The Elev-

---

**10.** Because a state official's Eleventh Amendment immunity is derivative of the state's, a congressional abrogation of state immunity also operates as an abrogation of the Eleventh Amendment immunities otherwise enjoyed by state officials. *See Duffy v. Riveland*, 98 F.3d 447, 452 n. 4 (9th Cir.1996). As a result, plaintiffs may maintain this suit against both the CDE and the named state officials under the IDEA, ADA, and Section 504.

**11.** Plaintiffs scatter their § 1983 claim across their First, Second, Third, and Sixth Causes of Action. *See* Complaint, ¶¶ 120, 124, 129, 139.

**12.** The State Defendants also seek to dismiss plaintiffs' Seventh and Eighth Causes of Action, which are also based on state law. As near as the Court can make out, however, these claims are not being pressed against any of the State Defendants—their allegations are limited solely to the conduct of the Ravenswood Defendants. Accordingly, the Court concludes that the State Defendants' motion to dismiss these claims must be DENIED AS MOOT. If plaintiffs intend these claims to reach the State Defendants, they must amend their complaint.

enth Amendment, however, has no application where state officials are sued in their individual capacities. *See Pena,* 976 F.2d at 473. Thus, to the extent the named state officials are being sued in their individual capacities, the Eleventh Amendment does not bar plaintiffs' pendant state law claims.

In summary, plaintiffs' Fourth and Fifth Causes of Action are HEREBY DISMISSED as against the CDE and as against the named state officials in their official capacities.

### 4. Adequacy of ADA and Section 504 claims

■ In support of their ADA and Section 504 claims, plaintiffs allege that the State Defendants have failed to monitor Ravenswood compliance with state and federal laws that mandate the provision of a FAPE to all children with disabilities, have failed to adequately investigate complaints regarding Ravenswood, and have failed to enforce the directives generated by CDE investigations. Responding to these allegations in a cryptic one-page passage in their moving papers, the State Defendants argue that plaintiffs' Section 504 and ADA claims must be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), because the complaint is lacking in "allegations of discrimination."

This argument, totally unsupported by case or statutory authority, leaves the Court a bit perplexed.[13] While Section 504 and the ADA certainly may be loosely referred to as "anti-discrimination" statutes, it is the regulations enacted pursuant to the acts that define the prohibited conduct. According to those regulations, a recipient of federal aid "discriminates" on the basis of disability when it aids or perpetuates discrimination by providing significant assistance to another entity that in turn discriminates. 34 C.F.R. § 104.4(b)(1)(v) (Section 504); 28 C.F.R. § 35.130(b)(1)(v)(ADA). A recipient of federal funds also discriminates when it utilizes a method of administration that has the effect of subjecting those with disabilities to dis-

crimination. 34 C.F.R. § 104.4(b)(4) (Section 504); 28 C.F.R. § 35.130(b)(3)(ADA). Plaintiffs' complaint alleges that Ravenswood violates Section 504 and the ADA in a variety of ways, and that the conduct of the State Defendants has perpetuated this discrimination. These allegations of "discrimination," as that term is defined by the Section 504 and ADA regulations, satisfy the liberal federal pleading requirements. Accordingly, the State Defendants' motion to dismiss plaintiffs' ADA and Section 504 claims pursuant to Rule 12(b)(6) is HEREBY DENIED.

### CONCLUSION

In summary, for the reasons set forth above, it is HEREBY ORDERED that:

(1) Plaintiffs' claims pursuant to 42 U.S.C. § 1983 are HEREBY DISMISSED in their entirety as against the California Department of Education.

(2) Plaintiffs' claims pursuant to 42 U.S.C. § 1983 are HEREBY DISMISSED, insofar as they seek retrospective monetary relief, as against Delaine Eastin, Joseph Carrabino, Marion McDowell, Katheryn Dronenburg, Dorathy Lee, S. William Malkasian, Kenneth Peters, David Romero, Joseph Stein, Gerty Thomas, and Paras Mehta in their official capacities.

(3) Plaintiffs' Fourth and Fifth Causes of Action are HEREBY DISMISSED in their entirety as against the California Department of Education.

(4) Plaintiffs' Fourth and Fifth Causes of Action are HEREBY DISMISSED in their entirety as against Delaine Eastin, Joseph Carrabino, Marion McDowell, Katheryn Dronenburg, Dorathy Lee, S. William Malkasian, Kenneth Peters, David Romero, Joseph Stein, Gerty Thomas, and Paras Mehta in their official capacities.

**IT IS SO ORDERED.**

---

**13.** The Court is even more bewildered by the State Defendants' "qualified immunity" argument, *see* State Defendants' Memorandum of Points and Authorities at 10–11 (filed Aug. 4, 1997), which in substance appears simply to restate the inadequate pleading argument that precedes it. Insofar as the State Defendants qualified immunity argument is premised on the alleged insufficiency of plaintiffs' pleadings, it is HEREBY DENIED for the same reasons as noted above.