**GOLETA UNION ELEMENTARY
SCHOOL DISTRICT; et al.,
Plaintiffs,**

**v.**

**Andrew ORDWAY; et al., Defendants.**

**and Related Counterclaims.**

**No. CV–99–07745 DDP.**

United States District Court,
C.D. California.

Oct. 12, 2001.

Sharon A Watt, Andrew V Arczynski, Filarsky & Watt, Ojai, CA, for Goleta Union Elementary School Dist., Hope Elementary School Dist., Santa Barbara High School Dist., Santa Barbara County Special Education Local Plan Area, Santa Barbara County Office of Education.

Steven M Wyner, Steven M Wyner Law Office, Manhattan Beach, CA, Cynthia Ordway.

Barry A Zolotar, California Department of Education, Sacramento, CA, Marsha A Bedwell, Department of Education, Sacramento, CA, Joyce O Eckrem, Joyce O Eckrem Law Offices, Sacramento, CA, for California Special Education Hearing Office.

Barry A Zolotar, California Department of Education, Sacramento, CA, Marsha A Bedwell, Department of Education, Sacramento, CA, for California Dept. of Education.

## ORDER RE SUMMARY JUDGMENT

PREGERSON, District Judge.

This matter comes before the Court on the counter-defendant Diana Rigby's mo-

tion for summary judgment. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court denies Rigby's motion for summary judgment.

## I. BACKGROUND

This action stems from an administrative hearing appeal regarding alleged violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). The plaintiffs and counter-defendants were the Goleta Union Elementary School District, the Hope Elementary School District, the Santa Barbara High School District ("SBHSD"), the Santa Barbara County Special Education Local Plan Area ("SELPA"), and the Santa Barbara Office of Education ("SBCOE"). The defendants and counter-claimants are Andrew Ordway ("Andrew"), and his mother, Cynthia Ordway. Andrew has been a special education student since 1993. (Counter–Cl.'s Stmt.Gen.Iss. at 1.)

The plaintiffs and counter-defendants filed this action on July 27, 1999 in order to appeal the April 30, 1999 decision of a California Special Education Hearing Officer (the "Hearing Officer"). The Hearing Officer found, *inter alia,* that the plaintiffs failed to offer Andrew a free and appropriate public education ("FAPE") as required by IDEA, and that one or more of the plaintiffs should be required to reimburse Cynthia Ordway for Andrew's residential placement. (*See* Compl., Ex. 1 at 19–21.) The plaintiffs sought to set aside the Hearing Officer's findings, as well as additional declaratory relief and attorney's fees. (*See* Compl. at 13–15.)

On September 24, 1999, defendants California Department of Education and California Special Education Hearing Office filed an answer to the complaint. On Oc-

tober 18, 1999, defendant Cynthia Ordway filed an answer and a counterclaim. The counterclaim named the plaintiffs as counter-defendants, as well as Marcia McClish, both individually and as the director of SELPA, and Diana Rigby, both individually and as the Director of Student Services for the SBHSD. The counterclaim included the following allegations and causes of action: (1) the counter-defendants violated Ms. Ordway's rights under IDEA; (2) the counter-defendants violated Ms. Ordway's rights under Section 504 of the Rehabilitation Act; (3) the counter-defendants "acted in bad faith in denying Counterclaimant her statutory rights under IDEA, and thereby violated Section 1983"; (4) the counter-defendants "acted with intentional disregard for Counterclaimant's statutory rights under IDEA, and thereby violated Section 1983"; (5) the counter-defendants "acted in bad faith in denying Counterclaimant her statutory rights under Section 504 [of the Rehabilitation Act] and thereby violated Section 1983"; and (6) the counter-defendants "acted with intentional disregard for Counterclaimant's statutory rights under Section 504 [of the Rehabilitation Act] and thereby violated Section 1983." (Counterclaim at ¶¶ 97–108.) Subsequently, Ms. Ordway agreed to dismiss her second, fifth, and sixth counterclaims. (*See* Opp.Mot.Dism. at 8–9.)

On August 10, 2001, the Court affirmed the Hearing Officer's findings in favor of defendants/counter-claimants on all grounds, with the exception of the finding that the AB 3632 assessment was completed in a timely manner.[1] The Court reversed the Hearing Officer's decision regarding the assessment and found in favor of the Ordways on that issue. The Court affirmed the Hearing Officer's monetary

---

1. An AB 3632 referral is a referral for assessment of a student's social and emotional status and may be initiated by a local education agency, an IEP team or a parent pursuant to Section 56320 of the California Education Code. Cal.Gov't.Code § 7576(b).

award and granted SEHO's and the Department of Education's motions for summary judgment. The Court affirmed the Hearing Officer's decision that Andrew Ordway's rights secured by IDEA were violated.

This matter is presently before the Court on a motion for summary judgment by counter-defendant Diana Rigby ("Rigby"). Rigby asserts she is entitled to judgment as a matter of law on three grounds: (1) a civil rights action under 42 U.S.C. § 1983 cannot be maintained based upon a violation of IDEA; (2) the Eleventh Amendment bars the instant action against Rigby to the extent that she is sued in her official capacity; and (3) Rigby is entitled to the affirmative defense of qualified immunity to the extent that she is sued in her individual capacity.

## II. DISCUSSION

### A. *Legal Standard for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252, 106 S.Ct. 2505. In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Id.* at 242, 106 S.Ct. 2505.

### B. *IDEA*

Congress enacted IDEA in order to "ensure that all children with disabilities have available to them a free [and] appropriate public education that emphasizes special education and related services designed to meet their unique needs ..." 20 U.S.C. § 1400(d)(1)(A); *see also Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179–84, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). "The Act gives disabled students a substantive right to public education and conditions federal assistance upon a State's compliance with the substantive and procedural goals of the Act." *Straube v. Florida Union Free Sch. Dist.*, 801 F.Supp. 1164, 1173 (S.D.N.Y. 1992). "The primary mechanism for delivering a free appropriate education is the development of a detailed instruction plan, known as an Individual Education Program ('IEP'), for each child classified as disabled." *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir.1995). As one court explained, IEP's are developed as a result of the combined efforts of the school district, the child's teachers, and the parents:

> [IEPs are] prepared at meetings between the school district, the child's teacher, and the child's parents or guardians, [and] define[ ] the child's present educational performance, establish[ ] annual and short-term[ ] objectives for improvements in that performance, and describe[ ] the specially designed instruction and services that will enable the child to meet those objectives.

*Straube*, 801 F.Supp. at 1173 (citing 20 U.S.C. § 1401(19)). IDEA requires that IEPs be reviewed at least annually. *See* 20 U.S.C. § 1414(a)(6).

The goal of the IEP requirement and of IDEA is to meet the unique educational needs of each child. Toward that end, IDEA recognizes that the school district,

itself, may not be able to meet the needs of all children. *See Straube*, 801 F.Supp. at 1172. Accordingly, IDEA provides the states with various private placement options. *See id.*

C. *Can an action under 42 U.S.C. § 1983 be maintained based upon a violation of IDEA?*

Rigby moves for summary judgment on the grounds that a violation of IDEA does not give rise to a claim under 42 U.S.C. § 1983. (*See* Mot. at 2.) According to Rigby, "the exclusive remedial provisions of IDEA cannot be subverted by an action under Section 1983 for monetary damages." (*Id.* at 8.) The Court has already ruled that:

> With respect to the more general preemption question that is before the Court on this motion, the Court finds that IDEA does not foreclose all remedies under Section 1983. As noted in *Emma C.*, the Northern District of California case which addressed this issue, in adding Section 1415(f) to IDEA in 1986, "Congress has specifically authorized § 1983 actions predicated on the IDEA." *Emma C.*, 985 F.Supp. at 945.

(6/21/00 Order Den.Mot.Dism. at 14.) At that time, the Court found that one critical issue was not suitable for resolution in the context of a motion to dismiss.

> In the present matter, the Court need not address the issue of whether the counter-claimant must prove more than a "simple" violation of IDEA in order to recover damages pursuant to Section 1983. The counter-claimant alleges that the counter-defendants acted in bad

faith and with intentional disregard for Andrew's right under IDEA. On a motion to dismiss, this pleading is sufficient to meet even the heightened standard endorsed by the Massachusetts District Court in *Andrew S.*, in which plaintiffs may only recover Section 1983 damages for IDEA violations of "constitutional proportions."

(*Id.* at 13–14 (footnote omitted).)

The question now before the Court is whether the Ordways must plead more than a "simple" violation of IDEA in order to recover damages pursuant to Section 1983. The Court finds that the plaintiffs may recover under Section 1983 for statutory violations of IDEA.

1. *Title 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 does not confer substantive rights, but merely redresses the deprivation of those rights elsewhere secured.[2] *Maine v. Thiboutot*, 448 U.S. 1, 5–6, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Those rights may be created by the Constitution or federal statute, and hence in a § 1983 action a person may challenge federal statutory violations by state agents. *Id.* (§ 1983 "encompasses claims based on purely statutory violations of federal law"). If the rights at issue are statutory, however, a § 1983 action is impermissible when "Congress intended to foreclose such private enforcement." *Wright v. Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Such intent is generally found either in the express language of a statute or where a statutory remedial scheme is so comprehensive that an intent to prohibit

**2.** Title 42 U.S.C. § 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

enforcement, other than by the statute's own means, may be inferred. *Id.* Of course, even the existence of a comprehensive remedial scheme will not bar resort to § 1983 if Congress states that it did not want its enactment construed to restrict or limit the remedies otherwise available. *See Mrs. W. v. Tirozzi,* 832 F.2d 748 (2d Cir.1987) (citing *Smith v. Robinson,* 468 U.S. 992, 1012 n. 16, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)).

■ It is well settled that § 1983 is "a generally and presumptively available remedy for claimed violations of federal law." *Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). This Court finds that Congress expressly authorized section 1983 suits to vindicate violations of IDEA-protected rights.

2. *Congress Intended to Permit § 1983 Actions to Enforce Rights Secured Under IDEA*

■ The question of whether a statutory violation of IDEA may provide the underlying cause of action in a § 1983 suit has "an unusually rich judicial and legislative provenance." *See Andrew S. v. The School Comm. of the Town of Greenfield,* 59 F.Supp.2d 237, 241 (D.Mass.1999). In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court held that the Education of the Handicapped Act ("EHA") (IDEA's predecessor) was the exclusive avenue through which disabled children could pursue claims against state educational service providers.

In 1986, in direct response to *Smith,* Congress added § 1415(f) to the EHA as part of the Handicapped Children's Pro-

tection Act of 1986. As amended, 20 U.S.C.A. § 1415 provides that: [3]

> "(f) Effect on other laws
>
> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973[ ], or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter."

20 U.S.C. § 1415 (historical notes) (quoting Pub.L. 105–17, Title 11, § 201(a)(2)(c), June 4, 1997).

Section 1415(f) clearly states that the provisions of IDEA do not provide the exclusive avenue for redress available to disabled children. The text of the amendment is silent, however, as to the application of the subsection to § 1983 actions. "In the ensuing years, this silence has perplexed the courts and generated, to some degree, a split of opinion among the Courts of Appeals regarding the relationship between section 1983 and the IDEA." *Andrew S.,* 59 F.Supp.2d at 242.

The Court finds that the legislative history of § 1415(f) makes it clear that Congress intended to provide for § 1983 actions for violations of IDEA. In considering the enactment of IDEA, Congress debated both the purpose of the statute and the Supreme Court's *Smith* decision. For instance, in 1985, during the first session of the 99th Congress, when the

---

**3.** The 1986 amendment did at least two other significant things. First, it changed the name of the statute to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1400(a). Second, it added a provision for attorneys' fees, which the EHA had lacked. *See* 20 U.S.C. § 1415(i)(3)(B).

bill introducing the EHA amendment was proposed, the House Report stated: "since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, Section 504 [the Rehabilitation Act] and Section 1983.... Congressional intent was ignored by the U.S. Supreme Court when, on July 5, 1984, it handed down its decision in *Smith v. Robinson*." H.R.Conf.Rep. 99–296 at *3 (1st Sess.1985) (hereinafter 1985 House Report). Later, after further debate in both chambers of Congress, the House Conference report stated that "[i]t is the conferees' intent that actions brought under 42 U.S.C. § 1983 are governed by this provision." H.R.Conf.Rep. 99–687 at *7 (1986), reprinted in 1986 U.S.C.C.A.N. 1807, 1809.[4]

The Ninth Circuit has not yet addressed whether the addition of § 1415(f) overrules the Supreme Court's decision in *Smith*. There is currently a split of authority among the other circuit and district courts as to what, if any, Section 1983 rights may result from a statutory violation of IDEA. The Second and Third Circuits have held that this amendment clearly expressed Congress' intent to permit plaintiffs to bring suit pursuant to Section 1983 for alleged violations of IDEA. *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 750 (2d Cir.1987); *Matula*, 67 F.3d at 493–94. A district court in the Northern District of California has also adopted this view. *See Emma C. v. Eastin*, 985 F.Supp. 940, 945 (N.D.Cal. 1997) (stating that "Congress has specifically authorized § 1983 actions predicated on the IDEA."). In contrast, the Tenth, Fourth, Sixth, Seventh, and Eighth Circuits have held that a plaintiff may not bring suit pursuant to § 1983 for any alleged violation of IDEA.[5] *See Sellers v. School Bd.*, 141 F.3d 524, 529 (4th Cir. 1998); *Padilla v. School Dist. No. 1 in City & County of Denver, Colo.*, 233 F.3d 1268 (10th Cir.2000); *Charlie F. v. Board of Educ.*, 98 F.3d 989 (7th Cir.1996); *Heidemann v. Rother*, 84 F.3d 1021 (8th Cir. 1996).

In *Emma C.*, the court denied a motion by state education officials to dismiss claims under IDEA and § 1983 filed by several disabled students, and held that compensatory damages were available for violations of IDEA. The court reasoned that, absent a clear direction to the contrary by Congress, federal courts are empowered to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute. *Emma C.*, 985 F.Supp. at 945. In *Tirozzi*, the Second Circuit held that parents are entitled to bring a § 1983 action based on alleged violations of IDEA or the Due Process and Equal Protection Clauses of the U.S. Constitution. *Tirozzi*, 832 F.2d at 755. Other

---

**4.** In *Matula*, the Third Circuit further elaborated on this legislative history:

> In enacting § 1415(f), Congress specifically intended that EHA violations could be redressed by § 504 and § 1983 actions, as the legislative history reveals. The Senate Report discussed *Smith* at length, including quoting favorably from the *Smith* dissent, *see* S.Rep. No. 99–112, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1799 ("Senate Report"). The House Conference Report stated [that] ... [s]ection 1415(f) was thus enacted to "reaffirm, in light of [*Smith*], the viability of section

504, 42 U.S.C. § 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children."

67 F.3d at 494 (citation omitted).

**5.** The Court notes that the Sixth and Eighth Circuits based their conclusions that IDEA preempts § 1983 on the notion that "general and punitive damages for the types of injuries alleged [ ] are not available under the IDEA." *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir.1996); *see also Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 980 F.2d 382 (6th Cir.1992).

courts have recognized that a § 1983 action for statutory violations of IDEA should proceed. *See also Cappillino v. Hyde Park Cent. Sch. Dist.*, 40 F.Supp.2d 513, 515–516 (S.D.N.Y.1999); *Walker v. District of Columbia*, 969 F.Supp. 794 (D.D.C.1997) (holding that plaintiffs may bring a § 1983 claim for damages to vindicate their rights under IDEA).

In *Matula*, the plaintiff, on behalf of her disabled child, sought damages for the persistent refusal of certain school officials to evaluate and provide necessary educational services. The Third Circuit concluded that: "In enacting § 1415(f), Congress specifically intended that EHA violations could be redressed by § 504 and § 1983 actions, as the legislative history reveals.... Accordingly, § 1983 supplies a private right of action for the instant case." *Matula*, 67 F.3d at 494; *see also Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 n. 3 (5th Cir.1990) (stating Handicapped Children's Protection Act of 1986 rejected the Court's conclusion in *Smith* that the EHA was an "exclusive remedy," and that, consequently, parents may continue to allege violations of § 1983 as well as § 504 of the Rehabilitation Act).

Based upon what this Court finds to be a clear expression of congressional intent to provide for § 1983 actions to vindicate rights protected under IDEA, the Court finds that the counter-claimants may proceed with a § 1983 claim for IDEA statutory violations.

### 3. *Andrew S.*

One Massachusetts district court has attempted to resolve the conflict between the circuits by taking what appears to be, at least superficially, a middle ground. *Andrew S.*, 59 F.Supp.2d at 245. In *Andrew S.*, the court held IDEA, with its provisions for equitable relief and attorney fees,

provided plaintiffs with a complete remedy. As the Massachusetts district court explained, most circuits appear to recognize that a plaintiff may bring a § 1983 cause of action based on a violation of IDEA "where the alleged misconduct is *constitutional* in proportion, not merely statutory." *Id.* at 244 (emphasis in original). The *Andrew S.* approach suggests that courts should allow IDEA actions to proceed under § 1983 only in situations where the underlying alleged misconduct is of constitutional magnitude; that is, where the alleged misconduct would itself support an *independent* claim for a constitutional violation. This approach would foreclose a direct cause of action under § 1983 for IDEA statutory violations. *Id.* ("Garden variety statutory violations of the IDEA cannot form the basis for a section 1983 action.").

The court based its opinion upon the Fourth Circuit's holding in *Sellers*. In *Sellers*, the court found that while the 1986 amendments to the EHA that created IDEA, particularly § 1415(f), did effect a legislative reversal of much of the *Smith* holding, they did not afford plaintiffs the right to demand compensatory and punitive damages in a jury trial under § 1983 for a simple statutory violation of IDEA.

The central problem with this approach is that nothing in the legislative history of § 1415(f) suggests that Congress intended to reserve § 1983 for the ambiguous category of "truly" constitutional violations. The 1986 amendments to IDEA make clear that disabled children alleging a bonafide violation of their statutory or constitutional rights should not be deprived of a remedy under § 1983, merely because their rights may, to some extent, enjoy simultaneous protection under IDEA. Congress passed the 1986 amendments with the clear intent to restore to disabled children what *Smith* had attempted to take

away: the right to bring actions under federal statutes (including § 1983) and the Constitution in order to vindicate rights that were simultaneously protected by IDEA. To read the amendments otherwise would produce the strange result that Congress amended IDEA in order to grant plaintiffs the right to bring constitutional claims under § 1983, a right that plaintiffs already possessed and thus could not be "granted" anew by Congress.

The approach proposed in *Andrew S.* is untenable for other reasons. First, it empowers a district court to decide that a cause of action is not sufficiently egregious to support a § 1983 action when Congress has clearly authorized such actions. The approach in *Andrew S.* asks the district court to conduct a subjective, case-by-case analysis based on whether the alleged misconduct is "bad enough" to sustain a § 1983 action. In *Tirozzi*, the plaintiffs commenced a civil rights action on their own behalf and on behalf of others similarly situated under § 1983 based on alleged violations of IDEA, the Rehabilitation Act, and of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The court in *Andrew S.*, noting the class action component of the complaint, commented approvingly that the *Tirozzi* complaint "was not limited to objections regarding the individualized educational programs of Dierdre W. and Nathan B.,

but rather was directed at an alleged pattern and practice of the Bridgeport School Board regarding all handicapped children in its school system." 59 F.Supp.2d at 245–46. According to the *Andrew S.* court, *Tirozzi*, "manifestly raised issues of constitutional proportions, much broader in scope than the plaintiffs' claims here." *Id.* at 245. In order to make the distinction between IDEA violations that may proceed under § 1983 and those that are barred under § 1983, the *Andrew S.* court is required to draw fine distinctions between the substantive merits of the cases. *Id.* at 246 ("Even in this litigation, however, the defendants' misconduct was much more egregious than what is alleged regarding Andrew" (referring to the facts of *Matula* )).

Section 1415(f) indicates that Congress intended to restore to plaintiffs the power to vindicate their IDEA rights using federal statutes such as § 1983. Congress has explicitly provided for § 1983 actions to enforce rights guaranteed under IDEA. The Court finds that the counter-claimant's § 1983 action may proceed.

### 4. *Damages*

One important result that flows from the determination that statutory violations of IDEA may support a § 1983 action is the availability of damages for violations of IDEA.[6] The Court is mindful that a dam-

---

**6.** The Ninth Circuit has addressed the question of whether damages remedies are consistent with the design of IDEA in *Mountain View–Los Altos Union High Sch. Dist. v. Sharron B.H.*, 709 F.2d 28, 30 (9th Cir.1983). In that case, the Ninth Circuit held simply that "[d]amage remedies for placement before full compliance with EAHCA procedures are not in keeping with the design of the Act." *Id.* The court left open the possibility that damages might be available for IDEA violations in exceptional circumstances or where the plaintiffs could demonstrate bad faith conduct on the part of the school district (circumstances

that were not present in the case before the court). *See id.* Moreover, as the court in *Emma C.* noted, the Ninth Circuit's adoption in *Mountain View* of the Seventh Circuit's reasoning in *Anderson* is no longer persuasive in the wake of *Franklin v. Gwinnett*, which established that "[t]he general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." 503 U.S. 60, 70–71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

ages remedy for IDEA violations will have significant policy implications. However, by providing for § 1983 actions to address IDEA violations, Congress appears to have intended this result. Important reservations have been expressed about the availability of a damages remedy for IDEA violations:

> [Awards of compensatory and punitive damages] present acute problems of measurability. Relief such as retroactive reimbursement is definable and concrete. The actual costs borne by parents for special education and related services provide an ascertainable benchmark for calculating the relief to which they may be entitled. By contrast, IDEA lacks any particular standard by which a court could evaluate what amount of compensatory or punitive damages is appropriate in a particular case.... Absent any such standards, the range of possible monetary awards would be vast, particularly in cases seeking recovery for less tangible injuries such as emotional distress or pain and suffering.

*Sellers,* 141 F.3d at 528 (internal citations omitted). The district court in *Emma C.* expressed similar reservations about the policy repercussions that might attend the availability of monetary relief in IDEA cases. For example, the possibility of compensatory damages could discourage educators from implementing innovative programs and could expose school districts to additional financial liabilities. *Emma C.,* 985 F.Supp. at 945. This Court also takes seriously the Third Circuit's admonition:

We caution that in fashioning a remedy for an IDEA violation, a district court may wish to order educational services, such as compensatory education beyond a child's age of eligibility, or reimbursement for providing at private expense what should have been offered by the school, rather than compensatory damages for generalized pain and suffering. *Matula,* 67 F.3d at 495.

The Supreme Court's decision in *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), permitted courts to award broader remedies under IDEA. The *Rowley* Court adopted a narrow construction of the substantive procedures of IDEA, concluding that a state satisfies its obligation to provide an appropriate education under IDEA when it provides individualized instruction and related services that allow the child with a disability to benefit educationally from instruction. *Id.* at 201, 102 S.Ct. 3034. By decisively defining "appropriate education," *Rowley* sent a clear message to school districts about the type of education that schools must provide to comply with IDEA provisions. The *Rowley* Court's definition therefore responds to concerns such as those expressed in *Sellers* that IDEA lacks any definitive standards by which a court could evaluate the appropriate amount of compensatory or punitive damages.

Finally, the Court notes that positive effects may accompany the availability of damages that follows when courts give full effect to Congress's intent to allow for § 1983 actions to vindicate IDEA-protected rights.[7]

---

7. *See* Kara W. Edmunds, *Implying Damages Under the Individuals With Disabilities Education Act: Franklin v. Gwinnett County Public Schools Adds New Fuel to the Argument,* 27 Ga.L.Rev. 789, 802–08 (1993) (arguments in favor of awarding compensatory damages under IDEA include: (1) the importance of remedies as an essential component of a private enforcement model; (2) the creation of an attitude favoring compliance; (3) the need to actively guarantee a *free appropriate public*

## D. The Eleventh Amendment Bar

■ Under the Eleventh Amendment, a state is not subject to suit in federal court. *See* U.S. Const.Amend. XI; *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (stating that "the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so"); *Clark v. State of Cal.*, 123 F.3d 1267, 1269 (9th Cir.1997). The Supreme Court has held that this immunity may only be overcome in three ways: the state may waive its immunity, it may consent to suit, or Congress can abrogate the state's immunity through appropriate legislation. *See, e.g., Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

In *Belanger v. Madera Unified School Dist.*, 963 F.2d 248 (9th Cir.1992), the Ninth Circuit held that school districts in California are an arm of the state, and therefore, enjoy Eleventh Amendment immunity. *See id.* at 250–54. The court found that California school districts were funded primarily by the state and thus any judgment against the school would necessarily require the use of state funds to satisfy the judgment. *Id.* at 251–52. To the extent that the Eleventh Amendment bars suits against California school districts, it also bars some suits against the school districts' employees who are sued in their official capacity. *See Porter ex rel. Porter v. Board of Tr. of Manhattan Beach Unif. Sch. Dist.*, 123 F.Supp.2d 1187 (C.D.Cal.2000) (holding that the plaintiff, as California's State Superintendent of Public Transportation, enjoyed Eleventh Amendment immunity from suit, even when sued only in her official capacity); *see also Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir.1995) (holding that superintendent was state agent entitled to Eleventh Amendment immunity).

■ In this case, Rigby is the Director of Student Services for the Santa Barbara School District. As in *Eaglesmith*, because this claim is against Rigby in her official capacity, and the school district is a state agency, Rigby is entitled to Eleventh Amendment immunity. The Court finds that the Eleventh Amendment bars suit against Rigby in her official capacity.

■ The Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 973 (9th Cir.1994). Nor does the Eleventh Amendment bar the award of prospective injunctive relief against state officers sued in their individual capacities. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir.1997). This is the "stripping doctrine" of *Ex Parte: Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In this case, however, the Ordways seek retroactive relief against Rigby in her official capacity, and to that extent, the Court finds that their claim is barred.[8]

---

education; and (4) the existence of three doctrinal bases permitting such an award).

**8.** The plaintiffs seek: (1) reimbursement for educational expenses incurred in connection with Student's detention in Juvenile Hall and residential placement by the Santa Barbara County Juvenile Court; (2) compensatory educational services as necessary to teach student how to read, write, and do mathematics at a level commensurate with his chronological age; (3) monetary damages in amount according to proof; (4) attorney's fees and costs under § 1415(e)(4)(B); and (5) attor-

### E. Qualified Immunity

 The counter-defendant next asserts that she is entitled to the affirmative defense of qualified immunity to the extent that she is sued in her individual capacity. Claims against state officials in their individual capacity are not barred by either § 1983 or by the Eleventh Amendment. *See* 1B, Martin A. Schwartz and John E. Kirklin, *Section 1983 Litigation: Claims & Defenses* (3d ed.1997); *see also Emma C.*, 985 F.Supp. at 947. However, such claims may be subject to the defense of qualified immunity. Public officials who carry out executive or administrative functions are protected from personal monetary liability so long as their actions do not violate "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This standard turns on the "objective legal reasonableness of the official's conduct." *Id.* at 818, 102 S.Ct. 2727 (footnote omitted). In *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court summarized the *Harlow* standard, holding that "[w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time this action was taken." *Id.* (citing *Harlow*).

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow*, 457 U.S. at 815, 102 S.Ct. 2727 (citation omitted). Government officials performing discretionary functions are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* In *Collins v. Jordan*, 110 F.3d 1363 (9th Cir.1996), the Ninth Circuit set forth the following two-part test for determining whether a state official is entitled to qualified immunity:

> The court must first determine whether the plaintiff has alleged a violation of a right that is clearly established and stated with particularity.... The plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established.... Second, the court must consider whether, under the facts alleged, a reasonable official could have believed that his conduct was lawful.... It is the defendant's burden to show that a reasonable ... officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right.

*Collins*, 110 F.3d at 1369 (internal quotations, citations and footnote omitted; emphasis removed).

Here, the movant asserts that Rigby's conduct, as pleaded in the counterclaims, "does not amount to conduct that a reasonable official would understand to be violating a firmly established constitutional provision." However, as the counter-claimant notes, the counterclaim does allege that Rigby participated in or failed to take action to prevent violations of IDEA, and that these IDEA violations amount to a violation of § 1983. (*See* Counterclaim at ¶¶ 72–88; Opp. at 8.) Moreover, the third and fourth counterclaims specifically allege

ney's fees and costs incurred in connection with SBCJC proceeding. (*See* Answer and

Counter–Compl. of Def. Cynthia Ordway at 23–23.)

that the counter-defendants, including Rigby, acted in "bad faith" and with "intentional disregard" for the counter-claimant's rights under IDEA and § 1983. (*See* Counterclaim at ¶¶ 101–04.) In its June 21, 2000 order, the Court found that:

> [T]hese allegations are sufficient to defeat a claim of qualified immunity in the context of a motion to dismiss. At this stage in the litigation, allegations of bad faith and intentional disregard are sufficient to meet the *Harlow* standard for defeating a claim of qualified immunity. *See Harlow,* 457 U.S. at 815, 102 S.Ct. 2727. Therefore, the Court denies the movants' motion to dismiss the third and fourth counter-claims, to the extent that those claims are alleged against McClish in her personal capacity.

(6/21/00 Order at 11.) The question now before the Court is whether such allegations are sufficient to defeat Rigby's contention that the doctrine of qualified immunity bars further claims against her in her individual capacity.

### 1. *Was the Right Alleged to Have Been Violated Clearly Established?*

The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court. *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial. *See Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particular-

ized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

In order to determine whether the law governing the conduct at issue was clearly established, the Court must first identify the substance of the conduct at issue in this dispute. The movant asserts that the conduct at issue is Rigby's conduct in transferring Andrew Ordway, at the request of Andrew's mother, from Goleta Valley Junior High School to La Colina Junior High School.[9] The counter-defendant therefore asks the Court to frame the conduct at issue as "the transfer of a special education student to a similar junior high school within the same school district, at the request of the child's mother." (*See* Mot. at 22.) Rigby contends that, at the time of Andrew's transfer in February 1998, no case law or express language in IDEA clearly established that a Director of Student Services could not satisfy the request of a parent of a special education student to change schools. Therefore, Rigby asserts that the law governing the conduct at issue could not have been clearly established.

In contrast, the Ordways frame the conduct at issue in broader terms: (1) Rigby's failure to investigate whether La Colina would be an appropriate placement for Andrew Ordway; (2) Rigby's failure to independently assess the causes of Andrew's behavior; and (3) Rigby's failure to make a timely AB 3632 Referral. The counter-claimants submit that the follow-

---

**9.** In this Court's 8/10/01 Order, the Court noted: "Ms. Rigby testified that she moved Andrew to La Colina at the request of Ms. Ordway. Ms. Rigby did this without investi-

gation whether La Colina would be an appropriate placement because she 'honor[s]' parental requests." (*See* 8/10/01 Order at 19.)

ing statutory rights are clearly established: the right to an AB 3632 Referral when warranted; the right to be assessed for behavioral problems that interfere with a child's ability to access the educational program and receive an educational benefit; and the right of a child to have a duly constituted IEP Team determine an appropriate educational placement. (*See* Opp. at 5.) The counter-claimants assert that these rights were clearly established under IDEA and provisions of the California Education Code enacted to implement and supplement IDEA.[10] In addition, they argue that Rigby is responsible not only for her own individual actions but for the acts (and omissions) of SBHSD as an entity.

The counter-claimants make two allegations regarding Rigby's conduct that appear to stem from her supervisory position as Director of Student Services for SBHSD: (1) the failure to independently assess the causes of Andrew's behavior, and (2) the failure to make a timely AB 3632 referral. The counter-defendant contends that Rigby cannot be held personally responsible for factual findings relating to the omission of statutory duties on the part of a different party (SBHSD). The counter-defendant argues that the Hearing Officer found that SBHSD, and not Rigby herself, failed to make a timely AB 3632 referral and failed to independently assess the causes of Andrew's behavior. The counter-defendant urges the Court to find these omissions to be actions of an entirely different party to the action, namely SBHSD.

■ The Court finds that *Monell* bars claims against Rigby based on respondeat superior liability. In *Monell v. Depart-*

*ment of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that respondeat superior may not serve as the basis for imposing § 1983 liability. Supervisory officials may not be held liable under § 1983 on the basis of respondeat superior, but only for their own wrongful behavior. *See* 1B Martin A. Schwartz and John E. Kirklin, *Section 1983 Litigation: Claims and Defenses* (3d ed.1997). When dealing with the liability of supervisory officials, the question is whether their own action or inaction subjected the claimant to the deprivation of federally protected rights. *Id.*

■ Under *Monell,* subject to certain exceptions discussed below, Rigby can be held liable only for her own allegedly wrongful behavior. In this case, the Court finds, based upon the Hearing Officer's findings and this Court's own affirmation of those findings, that Rigby's allegedly wrongful behavior—as an individual—consists of failing to investigate whether La Colina would be an appropriate placement for Andrew prior to his transfer to that school. Any findings on the part of the Hearing Officer or this Court relating to the conduct of SBHSD may not be attributed to Rigby herself.

Supervisory liability may also be based upon the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates," for his acquiescence in constitutional deprivations, or for conduct showing a reckless or callous disregard for the rights of others. *Larez v. Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991) (internal quotations and citations omitted); *see also Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir.1998). The counter-claimants allege that Rigby

---

**10.** *See* Cal.Educ.Code § 560000, *et seq.;* Cal. Code Regs. tit. 5, div. 1, ch. 3, sub-ch. 1.

acted in "bad faith" and with "intentional disregard" for the counter-claimant's rights under IDEA and § 1983. The Court finds that factual allegations in the Opposition fail to support the counter-claimants' assertions that Rigby acted in bad faith and with intentional disregard for the rights of others. For example, the counter-claimants assert that Rigby was asked about the status of Andrew's AB 3632 Referral and informed an assistant principal at La Colina that "[t]here was a procedure and she would take care of it." (*See* Opp. at 6.) This statement, however, does not create a triable issue of fact as to whether Rigby acted with reckless or callous disregard for the rights of others. The Court finds that no supervisory liability may be assigned to Rigby on the basis of findings that relate to acts or omissions on the part of the SBHSD as an entity.

■ The sole conduct at issue, therefore, is Rigby's conduct in arranging a transfer of Andrew to La Colina in February of 1997. The Court now turns to the question of whether federal law governing the conduct was clearly established on the date of the alleged wrong.

The "very action in question" need not previously have been ruled to be unlawful for a court to find that an official violated clearly established federal law. *See Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. The inquiry into whether the right at issue is clearly established "must be undertaken in light of the case's specific context, not as a broad general proposition." *Saucier v. Katz*, —— U.S. ——, ——, 121 S.Ct. 2151, 2153, 150 L.Ed.2d 272 (2001). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. The Ninth Circuit has stated that "[t]o determine whether law is clearly established, we 'survey the legal landscape' and examine those cases that are 'most like' the instant case." *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir.1996) (citation omitted). In addition, even if there is no closely analogous case law, a right can be clearly established on the basis of "common sense." *DeBoer v. Pennington*, 206 F.3d 857, 865 (9th Cir.2000). The Eighth Circuit has held that the defendant officials were not protected by qualified immunity because they acted in violation of an unambiguous federal statute and implementing regulations. *Jackson v. Rapps*, 947 F.2d 332 (8th Cir.1991).[11]

The Court finds that the relevant body of law is IDEA, 20 U.S.C. § 1400 et seq., and its enacting California regulations. As discussed above, IDEA assures all disabled children a free appropriate public education through IEPs. The Court finds that it was clearly established at the time that Rigby acted that school officials were under an obligation to fully assess a student before instigating a substantial change in the student's placement, such as a transfer of schools.[12] Title 34 C.F.R. § 104.35(a) clearly establishes that an eval-

---

**11.** This Court has already found: "SBHSD should have assessed independently the causes of Andrew's behavior and whether moving him to La Colina would be an appropriate placement." (8/13/01 Order at 19:11–13.) The Court has also found that SBHSD failed to make a timely referral: "The referral should have been made by the February 25, 1998 IEP meeting at which the IEP team decided to move Andrew to La Colina." (*Id.* at 21:5–7.)

**12.** 34 C.F.R. § 104.35(a):

(a) Preplacement evaluation. A recipient that operates a public elementary or secondary program or activity shall conduct an evaluation in accordance with the requirements paragraph (b) of this Section of any

uation must be conducted before any significant changes in a student's placement are instituted. In addition, placement decisions must be based upon the IEP. 34 C.F.R. § 300.552(a)(2). Thus, the IEP must be developed before a placement is chosen. *Spielberg by Spielberg v. Henrico County Pub. Sch.*, 853 F.2d 256, 259 (4th Cir.1988).

The Court finds that under clearly established law, Andrew's transfer from Goleta Valley to La Colina was an improper change in placement because it was made without the development of goals and objectives pursuant to an IEP, and without using the proper criteria for making placement decisions. The Court therefore finds that the law governing the conduct at issue is clearly established, at least as related to Rigby's transfer of Andrew to La Colina Junior High School. Under IDEA and its enacting legislation, the law clearly required Rigby to conduct an assessment before changing Andrew's placement.[13]

### 2. Could a Reasonable Official Have Believed That the Conduct Was Lawful?

The Court next addresses whether Rigby could reasonably have known that her conduct was a violation of Andrew Ordway's IDEA rights. A government official is entitled to qualified immunity even where reasonable officials

person who, because of handicap, needs or is believed to need special education or related services before taking any action with respect to the initial placement of the person in regular or special education and any subsequent significant changes in placement.
(b) Evaluation procedures. A recipient to which this subpart applies shall establish standards and procedures for the evaluation and placement of persons who, because of handicap, need or are believed to need special education or related services which ensure that: (1) Tests and other evaluation materials have been validated for the specific purpose for which they are used and are administered by trained personnel in conformance with the instructions provided by their producer; (2) Tests and other evaluation materials include those tailored to assess specific areas of educational need and not merely those which are designed to provide a single general intelligence quotient; and (3) Tests are selected and administered so as best to ensure that, when a test is administered to a student with impaired sensory, manual, or speaking skills, the test results accurately reflect the student's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the student's impaired sensory, manual, or speaking skills (except where those skills are the factors that the test purports to measure).

(c) Placement procedures. In interpreting evaluation data and in making placement decisions, a recipient shall (1) draw upon information from a variety of sources, including aptitude and achievement tests, teacher recommendations, physical condition, social or cultural background, and adaptive behavior, (2) establish procedures to ensure that information obtained from all such sources is documented and carefully considered, (3) ensure that the placement decision is made by a group of persons, including persons knowledgeable about the child, the meaning of the evaluation data, and the placement options, and (4) ensure that the placement decision is made in conformity with § 104.34.

13. "Ms. Rigby testified that she moved Andrew to La Colina at the request of Ms. Ordway. Ms. Rigby did this without investigating whether La Colina would be an appropriate placement because she "honor[s] parental requests." (Hearing transcripts, 2456.) However, IDEA does not simply require districts to "honor parental requests"; rather, it requires them to evaluate and collaborate with parents to determine an appropriate placement for each individual student." (8/13/01 Order at 19.)

may disagree as to his or her conduct, as long as the conclusion is objectively reasonable. *See Act Up!/Portland*, 988 F.2d at 872.[14] Although the counter-claimants have met the burden of showing the right at issue was clearly established, Rigby nevertheless may be entitled to qualified immunity if she can show that a reasonable official would not have known that the conduct in question would violate Andrew's clearly established rights. *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994).

In *Rowley*, the Supreme Court determined the level of instructions and services that must be provided to a student with disabilities to satisfy the requirements of IDEA. 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690. The Court determined that a student's IEP must be reasonably calculated to provide the student with some educational benefit. *Id.* at 200, 102 S.Ct. 3034. The substantive requirement of IDEA is that a program be " 'individually designed to provide educational benefit to the handicapped child.' " *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir.1987), quoting *Rowley*, 458 U.S. at 201, 102 S.Ct. 3034. In addition to the substantive component of IDEA that requires that the state provide an "appropriate" education, IDEA also outlines "rigorous procedural requirements." *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1525 (9th Cir.1994). IDEA and its California-enacted statutes set out a complex statutory scheme that emphasizes procedural safeguards, written documentation, individualized assessments, and attention to the unique needs of each child. The Court finds it implausible that an official with

Rigby's level of responsibility would not know that it was unlawful to take action to change the placement of a disabled child based solely on the telephone call of a parent. It is fair to presume that Rigby, as Director of Student Services, would be familiar with the statutory requirements of IDEA, and indeed, that such knowledge would be a crucial component of her position. While it is true that parental participation in the development of a child's IEP is central to IDEA, *see* 20 U.S.C. § 1413(a)(4)(A), such participation does not mean that IDEA's procedures may be disregarded.

IDEA requires that the education of a disabled student be "reasonably calculated" to provide a student with some educational benefit. Such calculation and planning appears to have been absent from Rigby's decision to transfer Andrew to La Colina. The Court finds that is clear that a reasonable supervisory official familiar with the precision and scope of IDEA's requirements would know that the law required more than the simple accommodation of a parent's request. The Court finds that a reasonable official could not have believed it was lawful to transfer Andrew Ordway to a different school without first conducting an investigation into whether the transfer was a proper placement.

## III. CONCLUSION

For the reasons set forth above, the Court denies the counter-defendant's motion for summary judgment.

IT IS SO ORDERED.

---

**14.** Saucier established that, in the Fourth Amendment context, if an officer's mistake as to what the law requires is reasonable, the officer is entitled to qualified immunity. —— U.S. at ——, 121 S.Ct. at 2158.