**Carin MEMMER, Plaintiff–Appellant,**

v.

**MARIN COUNTY COURTS,**
**Defendant–Appellee.**

**No. 97–16880.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1998.

Decided March 3, 1999.

Mitchell J. Green (argued), Law Offices of Mitchell J. Green, San Francisco, California, for the plaintiff-appellant.

Patrick K. Faulkner, John F. Govi (argued), Deputy County Counsel, San Rafael, California, for the defendant-appellee.

Before: ALARCON, O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a municipal court system provided reasonable accommodation, within the meaning of the Americans with Disabilities Act, to a visually impaired litigant during her trial on a civil claim.

I

Carin Memmer is visually impaired. She cannot read handwritten or typewritten documents, cannot identify documents in front of her, cannot evaluate trial exhibits, and cannot see clearly generally even with corrective lenses.

In 1996, Memmer's landlord brought a state-law unlawful detainer action in Marin County Municipal Court ("Municipal Court") against her. One week before the scheduled eviction trial, Memmer filed a "Request for Accommodations by Persons with Disabilities" with the Municipal Court, asking that she be provided with a bi-directional human reader of her choice to provide visual cues, to read written materials to her, to take notes, to describe documents and trial exhibits, and to deliver opening and closing arguments.

Pursuant to such request, the trial judge presiding over Memmer's case held a hearing on April 12, but decided to continue the proceeding until the trial. At that time, there were no other pre-trial hearings scheduled.[1] On the day set for trial, April 16, Memmer failed to appear, and a default was entered against her. Two days later, she filed a motion to vacate her default, which was granted. Memmer reiterated her request for accommodation, which was also granted; the court accordingly ordered that a reader be made available to her at trial.

Memmer's eviction case was actually tried on April 22. Pursuant to the court order of April 16, Anthony Calderon, a Spanish-language interpreter who worked with the court and was familiar with Municipal Court proceedings, was present to assist Memmer. Memmer, however, refused Calderon's assistance. She did so without talking with Cal-

---

**1.** Later on April 12, Memmer moved for a continuance of her eviction trial. After a hearing on April 15, Memmer's motion was denied.

deron or otherwise attempting to determine if Calderon would be a suitable reader. Memmer requested instead that another person, Sanford Gossman, be allowed to serve as a reader. The presiding trial judge granted her request, but limited Gossman's participation to interpreting and describing visual cues, taking notes, and reading written materials to Memmer. The presiding judge placed these limitations on Gossman because he had observed Gossman, in previous cases, to be disruptive in the courtroom. Under such conditions, the trial ensued before a jury, which returned a verdict for Memmer's landlord.

Memmer and Gossman filed an action *in forma pauperis* in the United States District Court for the Northern District of California against the Marin County Courts ("MCC"), all of the individual judges involved with Memmer's eviction proceeding, MCC's Americans with Disabilities Act ("ADA") coordinator, and the attorney representing Memmer's landlord, alleging that these defendants had violated their rights under the ADA, under the California Disabled Persons Act, and under California Rule of Court 989. Although Memmer and Gossman asserted a variety of claims, their principal contentions were that MCC failed to adopt adequate procedures for dealing with accommodation requests and that MCC's offer of a Spanish-language interpreter to assist Memmer did not constitute a reasonable accommodation. In their complaint, Memmer and Gossman sought injunctive relief and monetary damages.

The district court dismissed much of their complaint at the outset of the case, first concluding that Gossman lacked standing and accordingly dismissing him from the suit.[2] It then dismissed the claims against the judges, finding them shielded by judicial immunity.

Finally, the district court dismissed the claims against the landlord's attorney and against MCC's ADA coordinator for failure to state a claim for which relief could be granted.

The district court concluded that Memmer *did* state a cognizable claim against MCC for failing reasonably to accommodate her disability and accordingly ordered service of process against MCC. After answering, MCC filed a summary judgment motion. Memmer thereafter filed a motion for partial summary judgment on the issue of liability. Concluding that MCC's offer of a reader who was also a Spanish-language interpreter to assist Memmer was a reasonable accommodation, the district court granted MCC's motion for summary judgment and denied Memmer's cross-motion.

Memmer now appeals from the grant of summary judgment against her.[3] Although she had asserted discrimination claims under both the ADA and under the California Disabled Persons Act at trial, Memmer raises only her ADA claims on appeal. Nor does she appeal the dismissal of any of the individual defendants.

II

Memmer presents two separate claims under Title II of the ADA. *See* 42 U.S.C. § 12132. First, she argues that MCC failed reasonably to accommodate her visual impairment. Second, she argues that MCC's policy of referring accommodation requests to the presiding trial judge violated 28 C.F.R. § 35.105. We address these claims in turn.

2. Gossman did not appeal his dismissal.

3. In her complaint, Memmer requested "injunctive relief, enjoining [MCC] from maintaining a discriminatory and retaliatory course of conduct against them, and affirmatively requiring [sic] all the defendants from interfering with the peaceful exercise by Memmer and Gossman, [sic] their rights under both federal and state law." Memmer's complaint focuses on MCC's actions with regard to her eviction suit, but she appears to have been evicted over two years ago. There is

no evidence in the record that there remains an actual controversy. Her claims for injunctive relief are therefore moot. *See Williams v. Alioto*, 549 F.2d 136, 143–44 (9th Cir.1977).

Injunctive relief, however, is not all that Memmer seeks. Instead, she also is suing for monetary damages (both compensatory and punitive), which are recoverable under the ADA in certain circumstances even where the discriminatory conduct has ceased. Accordingly, although her request for an injunction is moot, her suit for damages is not.

### A

Section 12132 provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Although section 12132 itself does not expressly provide for reasonable accommodations, Congress entrusted the Attorney General with the authority to promulgate regulations defining the scope of the prohibitions set forth in Title II, *see id.* § 12134(a). One such implementing regulation is 28 .C.F.R. § 35.130(b)(7), which provides that:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7). Thus, the key inquiry here is whether MCC discriminated against Memmer by failing to offer her reasonable accommodation for her disability.

■ Before turning to the merits of Memmer's discrimination claim, we must address two preliminary points. First, because Memmer bears the burden of establishing an ADA violation, she must establish the existence of specific reasonable accommodations that MCC failed to provide. *See Weinreich v. Los Angeles County Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 423, 139 L.Ed.2d 324 (1997); *see also Barnett v. U.S. Air, Inc.,* 157 F.3d 744, 748–49 (9th Cir.1998) (holding that the plaintiff bears the burden of establishing the availability of a reasonable accommodation in cases brought under Title I of the ADA). Second, because Memmer's suit is for monetary damages, she must show *intentional* discrimination. *See Ferguson v. City of Phoenix,* 157 F.3d 668, 674–75 (9th Cir.1998); *Bartlett v. New York State Board of Law Examiners,* 156 F.3d 321, 331 (2d

Cir.1998), *petition for cert. filed,* (U.S. Feb. 8, 1999) (No. 98–1285); *Tyler v. City of Manhattan,* 118 F.3d 1400 (10th Cir.1997). Although *Ferguson* left unresolved the question of whether intentional discrimination can be established only by proving discriminatory animus, or whether deliberate indifference is sufficient, *see, e.g., Bartlett,* 156 F.3d at 331 (holding that deliberate indifference is sufficient), *Ferguson* made clear that a plaintiff at least must establish deliberate indifference to recover monetary damages under Title II of the ADA. *See Ferguson,* 157 F.3d at 675.

### 1

■ Memmer first argues that MCC's failure to provide any accommodation during pre-trial proceedings constituted discrimination in violation of the ADA.

The regulation governing reasonable accommodations, 28 C.F.R. § 35.130(b)(7), requires that accommodations be provided only "when the modifications are necessary to avoid discrimination on the basis of disability." It is clear from the record, however, that Memmer's visual disability did not disadvantage her in any way during pre-trial proceedings. In her request for accommodations, Memmer sought assistance with activities such as examining trial exhibits and reading documents. None of the pre-trial hearings involved activities with which Memmer needed assistance. Because Memmer was not disadvantaged in any way by her disability, it logically follows that no accommodations during the pre-trial stage were required.

Even assuming that there were accommodations available that would have somehow assisted Memmer in her pre-trial proceedings, there is no evidence of the discriminatory intent necessary for Memmer to recover monetary damages. *See Ferguson,* 157 F.3d at 674–75.

### 2

■ Memmer claims next that MCC discriminated against her during the trial itself, because its offer of a Spanish-language inter-

preter to assist her with the trial was not a reasonable accommodation.

Memmer relies heavily on our decision in *Duffy v. Riveland,* 98 F.3d 447 (9th Cir. 1996). In that case, a deaf prisoner was offered a Department of Corrections employee as a sign-language interpreter in a prison disciplinary proceeding. The proposed interpreter "had no formal training in sign language"; she was "not a professional interpreter"; and she had "learned how to sign through her relationship with her parents." *Id.* at 456. Given those facts, we concluded that a material question of fact existed as to the reasonableness of the accommodation offered. Memmer claims that, just like the interpreter in *Duffy* was not sufficient because she was not trained in assisting deaf people, Calderon was not an adequate reader because he was not specially trained in assisting visually impaired persons.

Memmer's disability, however, differs from Duffy's in a crucial respect. Duffy was deaf; Memmer is visually impaired. Accommodating a deaf person requires a special skill— the ability to converse in sign language—not possessed by the ordinary person. Memmer's evidence did not show that accommodating her required more than a helper with the ability to observe, to read, and to communicate verbally with her. These skills are possessed by the average person, and, more importantly, were possessed by Calderon, the Spanish-language interpreter offered by MCC.

Because Memmer bears the burden of proof, she must show how the accommodations offered by MCC were not reasonable. *See Weinreich,* 114 F.3d at 978 (9th Cir. 1997). Memmer now claims that Calderon did not have the skills needed to assist her adequately. It is undisputed, however, that she never consulted with Calderon to determine in what ways Calderon could or could not assist her. Thus, Memmer is unable to point out any specific tasks that Gossman— the reader of her choice—was better suited to assist her with than Calderon. Although Calderon is trained in foreign language interpreting (as distinguished from specific training in assisting visually impaired persons), it does not appear that a specialized background would have been very helpful. Because Memmer has failed to provide evidence that Calderon was a less able or sufficient reader than Gossman, she has not carried her burden of showing that the accommodations offered by MCC were not reasonable. *See Weinreich,* 114 F.3d at 978.

Moreover, allowing Memmer to refuse outright the services of a court-appointed assistant in favor of one who had previously been deemed a vexatious and disruptive litigant would require MCC to make "substantial modifications" in the way it runs its court system. Such a drastic result is simply not mandated by the ADA. *See* 28 C.F.R. § 35.130(b)(7); *Bercovitch v. Baldwin School, Inc.,* 133 F.3d 141, 152 (1st Cir.1998).

Finally, as previously noted, we have explicitly held that monetary damages are not warranted in cases of unintentional discrimination. *See Ferguson,* 157 F.3d at 674–75. Even assuming that Calderon would not have been able effectively to assist Memmer, her failure to produce evidence of discriminatory intent on the part of MCC is fatal to her ADA claim.

### B

■ Memmer's second claim of disability discrimination is that MCC's procedures for processing accommodation requests do not satisfy the requirements set forth in 28 C.F.R. § 35.105(a), because MCC's current procedures are not exactly the same as those outlined in a self-evaluation plan that MCC had created pursuant to 28 C.F.R. § 35.105(a).

As discussed above, Congress, in 42 U.S.C. § 12134(a), specifically provided for the promulgation of regulations defining the scope of the prohibitions set forth in Title II. One such regulation, 28 C.F.R. § 35.105(a), requires all public entities to conduct comprehensive self evaluations to identify access-related deficiencies and to take remedial action to provide full and equivalent participation to disabled persons. This regulation provides that:

> A public entity shall, within one year of the effective date of this part, evaluate its current services, policies, and practices, and

the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.

28 C.F.R. § 35.105(a). Pursuant to this regulation, MCC conducted a self-evaluation of its procedures and developed a self-evaluation plan outlining procedures for dealing with requests for accommodation.

The procedures actually in place at the time of Memmer's trial appear to differ from those outlined in the self-evaluation plan. Under those in place since January 1996, a litigant seeking accommodations submits, pursuant to California Rule of Court 989.3(c), an official accommodations request form. This form is then referred to the trial judge presiding over that litigant's case for a decision on what accommodation to provide. It was pursuant to these procedures that MCC processed Memmer's request for accommodation.

Memmer argues that MCC's policy of processing accommodation requests in this manner, rather than pursuant to the procedures outlined in the self-evaluation plan, violates 28 C.F.R. § 35.105. In analyzing this argument, it is appropriate to begin with the regulation itself. Nothing in the plain language of 28 C.F.R. § 35.105 forbids MCC from implementing procedures other than those described in the self-evaluation plan. *See Daniels v. Apfel,* 154 F.3d 1129, 1134 (10th Cir.1998) (rejecting interpretation of a regulation that was not supported by the plain language of the regulation). Instead, section 35.130 simply requires that a public entity make "necessary modifications" to ensure that its services comply with the ADA. It does not prohibit public entities from utilizing procedures other than those outlined in the self-evaluation plan.

Interpreting section 35.130 as locking public entities into the procedures outlined in the self-evaluation plan would, in fact, ill serve the objectives of the ADA generally. Suppose, for example, that a public school formulates a self-evaluation plan (pursuant to sec-

tion 35.130) that contains plans for physical improvements aimed at facilitating access by physically disabled persons. Suppose further that, after the plan is developed, but before it is implemented, technological developments make an alternative set of renovations both cheaper and more effective (in terms of providing access to the disabled). Under Memmer's reading of section 35.130, the school would be barred from deviating from the self-evaluation plan, and doing so would subject it to liability under the ADA. Such an interpretation of the ADA is simply untenable.

Accordingly, we hold that a public entity's decision to adopt procedures other than those outlined in its self-evaluation does not, in itself, constitute a violation of the ADA.

### III

Finally Memmer contends that California Rule of Court 989.3(c)(4) requires that the names of applicants submitting requests for accommodation be kept confidential. According to Memmer, the fact that she had filed a request for accommodation was disclosed in open court on various occasions.

Memmer, however, has not provided any case law or other support for the proposition that California intended to create a private right of action for violations of court rules, *see generally Moradi–Shalal v. Fireman's Fund Ins. Cos.,* 46 Cal.3d 287, 299—300, 250 Cal.Rptr. 116, 758 P.2d 58 (Cal.1988) (discussing when implied rights of action will be found under California law), and we have found no cases so holding. Moreover, there is no evidence here that MCC intentionally violated any court rule. Thus, summary judgment was appropriately granted on this claim.[4]

AFFIRMED.

---

4. MCC asserts judicial immunity as an alterna-

tive ground for affirming the grant of summary

judgment in its favor. In light of our analysis of Memmer's ADA claims, we need not address MCC's alternative argument.

Finally, MCC requests that the court, on its own motion, award it damages and fees pursuant to 42 U.S.C. § 1988(b), Ninth Circuit Rule 28–2.3, and Federal Rule of Appellate Procedure 38. In our discretion, we decline to do so.