Jane ROE, individually, and the natural mother and Guardian on behalf of Preschooler II, a minor child, Plaintiffs,

v.

The State of NEVADA; State of Nevada Department of Education; Keith Rheault, in his individual and official capacity; Clark County School Board of Trustees; Clark County School District, Carlos Arturo Garcia, in his individual and official capacity; Char-

lene A. Green, in her individual and official capacity; Michael S. Harley, in his individual and official capacity; Kay Davis, in her individual and official capacity; Darryl Wyatt, in his individual and official capacity; Kathleen Lisanti, in her individual and official capacity; and Does 1 to 10, inclusive, Defendants.

No. CVS040348–RLH(PAL).

United States District Court, D. Nevada.

Aug. 10, 2004.

§ 1683.

Marianne Lanuti, Law Office of Marianne C Lanuti, Henderson, NV, Niels L. Pearson, Peason Patton Shea Foley & Kurtz, Las Vegas, NV, for Preschooler II, Roe, Jane, Plaintiffs.

William L. Bryson, Mark E. Ferrario, O'Reilly & Ferrario, LLC, Las Vegas, NV, for Clark County School Board of Trustees, Clark County School District, Davis, Kay, Garcia, Carlos Arturo, Green, Charlene A., Harley, Michael S., Darryl Wyatt, defendants.

James E. Irvine, Brian E. Sandoval, Nevada Attorney General's Office, Carson City, NV, for Lisanti, Kathleen, Rheault, Keith, State Of Nevada, State of Nevada Department of Education, defendants.

## ORDER

HUNT, District Judge.

Before the Court is Defendants', Clark Count School Board of Trustees, Clark County School District, Carlos Arturo Garcia, Charlene A. Green, Michael S. Harley, Kay Davis, Darryl Wyatt and Kathleen LiSanti, **Motion to Dismiss** (# 09), filed May 17, 2004, and **Errata** (# 11), filed May 26, 2004. The Court has also considered Plaintiffs' Opposition (# 14), filed June 17, 2004, and Defendants' Reply (# 22), filed July 27, 2004.

Defendants' Errata explains that due to an inadvertent clerical error, the initial page of Defendants' Exhibit 1 and the final two pages of Defendants' Exhibit 2, attached to Defendants' motion to dismiss, contain personally identifiable information regarding Plaintiff preschooler. Defendants request that those three (3) pages be removed and stricken from the Exhibits. The Court will grant that request.

Also before the Court is Defendants', Clark Count School Board of Trustees, Clark County School District, Carlos Arturo Garcia, Charlene A. Green, Michael S. Harley, Kay Davis, Darryl Wyatt and Kathleen LiSanti, **Motion to Stay Discovery Pending Rulings on Defendants' Motions** (# 15), filed June 18, 2004. The Court has also considered Plaintiffs' Opposition (# 19), filed June 28, 2004, and Defendants' Reply (# 23) filed July 27, 2004.

## BACKGROUND

Plaintiff Jane Roe commenced this lawsuit on behalf of herself and as guardian of her minor child, Preschooler II, by filing a

Complaint on March 23, 2004, followed by an Amended Complaint filed on April 29, 2004. Preschooler II, in the 2002–2003 school year, was a four year old, non-verbal, autistic child, who was also diagnosed with the neurological disease of tuberous sclerosis (TS), a genetic disorder that causes tumors to form in many different organs including the brain, eyes, heart, kidneys, skin and lungs. Children diagnosed with TS will show symptoms of seizures, rashes and skin lesions.

Based on Preschooler II's diagnosis, he is eligible for special education services under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et. seq. For context to this suit, the IDEA provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures. 20 U.S.C.A. § 1412; *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179–180, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (describing evolution and major provisions of the act). The IDEA's primary purpose is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C.A. § 1400(c). This purpose is achieved through the development of an individualized education program ("IEP") for each child with a disability. 20 U.S.C.A. § 1401(a)(18)(D). The IEP is crafted annually by a team that includes a representative of the local educational agency, the child's teacher and parents, and, in appropriate cases, the child. 20 U.S.C.A. § 1414(a)(5). The IEP document must contain: information regarding the child's present levels of performance; a statement of annual goals and short-term instructional objectives; a statement of the specific educational services to be provided and the extent to which the child can participate in regular-educational programs; and objective criteria for measuring the student's progress. 20 U.S.C.A. § 1401(a)(2).

In additional to these substantive provisions, the IDEA contains numerous procedural safeguards. In particular, the IDEA requires that the parents or guardians of a disabled child be notified of any proposed change in "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child," and that they be permitted to bring a complaint about "any matter relating to" such evaluation and educational placement. 20 U.S.C.A. § 1415(b)(1)(C)-(E).

When a complaint is made, the child's parents are entitled to "an impartial due process hearing" conducted either by the state or local educational agency, or an intermediate educational unit, as determined by state law. 20 U.S.C.A. § 1415(b)(2). After the administrative hearing officer renders a decision, "[a]ny party aggrieved by the findings and decision" has the right to bring a civil action in state or federal court. 20 U.S.C.A. § 1415(e)(2).

As such, Defendant Clark County School District ("CCSD") first convened an Individualized Education Plan ("IEP") meeting regarding Preschooler II on March 21, 2002. During the 2002–2003 school year, two additional meetings were held, on October 31, 2002, and March 21, 2003. Plaintiff Jane Roe was present at all the IEP meetings.

The educational program provided for Preschooler II by CCSD consisted of two components, the school component and the home component. The school component consisted of full-time placement in a special education pre-school program known as Kids Intensive Delivery of Services ("KIDS") at Betsy Rhodes Elementary.

This program was staffed by one teacher (Defendant LiSanti), two teacher's aides, a part time speech therapist and an itinerant teacher who came in daily to work with the pupils while the teacher was given preparation time. In addition to the special education pupils in the KIDS program, two "typical peers," were included in the class to serve as social models for the special education students.

The home component consisted of twenty (20) hours per week of intensive, one-on-one in-home instruction. This instruction was to be carried out by representatives from the Lovaas Institute for Early Intervention ("LIFE"), one of several special education home service providers which have been approved by CCSD.

Preschooler II began the school component on August 29, 2002, the inception of the KIDS program at Rhodes Elementary. The KIDS teacher, Defendant LiSanti, on September 24, 2002, suffered a heart attack and was absent from school until October 17, 2002. During this time, the KIDS program was staffed by various substitute teachers.

The home component of Preschooler II's IEP was approved at the October 31, 2002 IEP meeting, and the home services commenced in January 2003.

In Spring 2003, Plaintiff Roe was contacted by the principal of Rhodes Elementary, Defendant Darryl Wyatt, regarding an investigation of Defendant LiSanti based upon allegations of mistreatment of Preschooler II. Defendant LiSanti was placed on administrative leave. The allegations contained in the Amended Complaint that are relevant to this action include: (1) that Preschooler II was made to walk from the bus to the classroom without shoes on four occasions; (2) that Preschooler II was slapped by Defendant LiSanti, or taken by the hands and forced to slap himself; and (3) that Preschooler II was "slammed" in a chair by Defendant LiSanti. Additionally, the Amended Complaint contains allegations of bruises found on Preschooler II.

After receiving information regarding the above allegations, Plaintiff Roe requested to have Preschooler II removed from Rhodes Elementary and placed in a KIDS program at another elementary school. Preschooler II began attending another CCSD KIDS program on May 30, 2003.

At the March 2003 IEP meeting, Preschooler II's LIFE consultant attended with Plaintiff Roe; based upon the input from the LIFE consultant, Plaintiff Roe requested that the hours of the home component of Preschooler II's program be increased. The IEP team denied this request.

### Procedural History

Pursuant to 20 U.S.C. § 1415(f), Plaintiff Roe requested a due process hearing before an impartial hearing officer. This hearing took place on June 17, 2003, before State Hearing Officer Ann Padover, and lasted over five days. On October 10, 2003, Padover issued a decision concluding that: (1) Preschooler II was denied FAPE only during the time when Defendant LiSanti was absent from the classroom because of health issues and that the substitutes failed to implement Preschooler II's IEP during that time period; (2) there was no need for a specific behavior plan for Preschooler II; (3) the denial of Plaintiff Roe's request for additional home instruction did not result in a denial of FAPE; and (4) there was no evidence that the alleged mistreatment incidents interfered with Preschooler II receiving FAPE. Plaintiffs appealed to the State Review Officer pursuant to 20 U.S.C. § 1415(g).

State Review Officer Joyce Eckrem ("SRO") reviewed the record and issued a decision on February 23, 2004. The SRO decision found (1) Padover properly ex-

cluded evidence on the issue of whether the enforcement provisions of NRS 388.581 had been violated, as they are not standards of the state educational agency within the meaning of IDEA; (2) sufficient evidence regarding the alleged incidents of mistreatment was introduced to determine whether or not the alleged incidents resulted in a denial of FAPE; (3) the IEP goals were measurable and did not result in denial of FAPE; (4) Padover erred in finding there was no need for a specific behavior plan, and the lack of such a plan resulted in infringement of parents' right to participate in IEP and therefore in a denial of FAPE; (5) the Hearing Officer was correct in determining that a program providing Preschooler II with 30 hours of classroom education and 20 hours of at-home education was appropriate and not a denial of FAPE.

Plaintiffs have now filed this action seeking review of the IDEA due process proceedings pursuant to 20 U.S.C. § 1415(i)(2). In addition to Plaintiffs request for review additional causes of action have been pled. Specifically, Plaintiffs' eight causes of action consist of: (1) Petition for Judicial Review, Declaratory and Equitable Relief and Claim for Attorney's Fees and Costs; (2) Violation of the Americans with Disabilities Act; (3) Violation of the Rehabilitation Act; (4) Violation of Title 42 U.S.C. § 1983; (5) Monell/Canton Claims; (6) Assault, Battery and Use of Aversive Interventions; (7) Negligence Claims; and (8) Negligent Failure to Report.

### DISCUSSION

Defendants seek to dismiss Plaintiffs' second, third, fourth, fifth, and eighth causes of action for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6). Specifically, Defendants seek to dismiss Plaintiffs' causes of action brought pursuant to the Americans with Disabili-

ties Act ("ADA"), Rehabilitation Act ("RA"), 42 U.S.C. § 1983, Monell/Canton, Assault, Battery and Use of Aversive Interventions, Negligence, and Negligent Failure to Report. Additionally, the Defendants request that the Court enter a declaratory judgment regarding the question of law as to whether the enforcement provisions of NRS 388.521 et seq. are "state educational requirements" under IDEA.

### I. *Federal Rules of Civil Procedure 12(b)(6)*

In a Rule 12(b)(6) attack, the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Yamaguchi v. U.S. Dept. of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996). The Ninth Circuit has further defined this rule explaining that courts only accept as true the well-pleaded facts, and ignore "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." *See W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981) *cert. denied* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474. In practice, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v.*

*Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir.1988). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

### A. Second and Third Causes of Action–Violation of the Americans with Disabilities Act and Rehabilitation Act

■ Plaintiffs' second and third causes of action are for violations of the ADA and violations of the RA against the State, State Board, CCSD Board and the District. Defendants contend that Plaintiffs fail to allege facts that could possibly support a claim of intentional discrimination under these acts. Specifically, Defendants argue that there are no facts that show that Preschooler II was excluded from participation in Defendants' program, nor do they assert facts that could possibly prove that anything that allegedly happened to Preschooler II was discrimination by reason of his disability or solely by reason of his handicap.

Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability. The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs. Title II of the ADA provides:

> Subject to the provisions of the subchapter, no qualified individual with a disability shall, by reason of such disability, excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Similarly, the RA provides:

> No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a).

■ To establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of her disability. *See Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997). To establish a violation of the RA, a plaintiff must show that (1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance. *See id.*

The Court finds that Plaintiffs' Amended Complaint puts forth alleged facts that support a prima facie claim under the ADA and § 504 of the RA. Defendants do not take issue with the first element that establishes a violation of the ADA or the first two elements that establish a violation of § 504 of the RA, but primarily question whether Plaintiffs have alleged facts that support the last or last two elements. Plaintiffs repeatedly allege, in various ways, that Preschooler II was abused at school by his teacher and that this abuse deprived him of his education. Plaintiffs also allege that this abuse happened because Preschooler II was an autistic child and participating in a special education

preschool. Additionally, Plaintiffs allege that because Defendants knew of the alleged abuse yet failed to inform Preschooler II's parents, Plaintiff Roe was deprived participation in the IEP process. Accordingly, Plaintiffs allegations are sufficient to defeat Defendants 12(b)(6) motion and support their second and third causes of action for violation of the ADA and § 504 of the RA.

■ Defendants next argue that even if the Court found that Plaintiffs put forth sufficient facts to establish a prima facie case under the ADA or § 504 of the RA, *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998) precludes them from recovering compensatory damages because Plaintiffs cannot show discriminatory intent.

■ The same remedies are available for violation of Title II of the ADA and § 504 of the RA. *See* 42 U.S.C. § 12133. The remedies, in turn, are the same as those set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. *See* 29 U.S.C. § 794a(a)(2); *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998). In accord with Title VI case law, *see Guardians Ass'n v. Civil Serv. Comm'n,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), "compensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent." *Ferguson,* 157 F.3d at 674; *see also Memmer v. Marin County Courts,* 169 F.3d 630, 633 (9th Cir.1999). However, *Duvall v. County of Kitsap,* 260 F.3d 1124 (9th Cir.2001), explains with some precision the level of intent required to support an award of compensatory damages.

■ In that case, a hearing-impaired litigant sued state court and county personnel under Title II of the ADA and § 504 of the RA for their failure to provide special accommodation in the form of real-time transcription for his hearings. *Id.* at

1129. The Ninth Circuit held that the "deliberate indifference" standard applied. *Id.* at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citing *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). The first element is satisfied if the public entity has notice that an accommodation is required. *Id.* The second element is satisfied if the entity's "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* Under the second element, "a public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." *Id.*

Plaintiffs' Amended Complaint alleges that the Defendants were deliberately indifferent because they had notice of the alleged abuse of Preschooler II and yet failed to act. Once again, as set forth by the Ninth Circuit, these allegations are sufficient to establish a claim for compensatory damages under Title II of the ADA and § 504 of the RA.

**B. *Fourth and Fifth Cause of Action–42 U.S.C. § 1983***

Plaintiffs Fourth Cause of Action is a claim pursuant to 42 U.S.C. § 1983 against all defendants based on the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA") as well as the Fourth and Fourteenth Amendments of the United States Constitution. Defendants argue that Plaintiffs fail to state a claim under 42 U.S.C. § 1983 because: (1) Congress created in IDEA an independent enforcement mechanism sufficiently comprehensive to demonstrate Congressional intent to preclude a section 1983 claim; (2)

Plaintiffs have failed to allege facts that amount to constitutional seizure or that can support a constitutional claim based upon the Fourteenth Amendment; (3) no separate cause of action exists under *Monell* and *Canton;* (4) there is no municipal liability; and (5) Defendants are entitled to qualified immunity.

An individual whose federal constitutional rights have been violated by a public official acting under color of state law may bring an action against the official for damages pursuant to 42 U.S.C. § 1983. *Orin v. Barclay,* 272 F.3d 1207, 1214 (9th Cir.2001). Title 42 U.S.C. § 1983 does not confer substantive rights, but merely redresses the deprivation of those rights elsewhere secured.

Title 42 U.S.C. § 1983 provides in part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Those rights may be created by the Constitution or federal statute, and hence in a section 1983 action a person may challenge federal statutory violations by state agents. *Maine v. Thiboutot,* 448 U.S. 1, 5–6, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

### 1. IDEA

Regarding Defendants first argument that Congress created in IDEA an independent enforcement mechanism sufficiently comprehensive to demonstrate Congressional intent to preclude a section 1983 claim, the Court disagrees.

If the rights at issue in a section 1983 cause of action are statutory, the action is impermissible when "Congress intended to foreclose such private enforcement." *Wright v. Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Such intent is generally found either in the express language of a statute or where a statutory remedial scheme is so comprehensive that an intent to prohibit enforcement, other than by the statute's own means, may be inferred. *Id.* Of course, even the existence of a comprehensive remedial scheme will not bar resort to section 1983 if Congress states that it did not want its enactment construed to restrict or limit the remedies otherwise available. *See Mrs. W. v. Tirozzi,* 832 F.2d 748 (2d Cir.1987) (citing *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)).

A split currently exists among the federal circuits whether a statutory violation of the IDEA creates a sufficient basis to anchor a claim under section 1983. The Ninth Circuit has yet to decide this issue, however, Defendants contend that the circuits whose reasoning prohibits section 1983 claims based on IDEA comport with the Ninth Circuit's holdings regarding section 1983 in general. Additionally, Defendants argue that the logic and reasoning of the courts prohibiting section 1983 based on IDEA is sound and persuasive.

The Court disagrees and is persuaded by the reasoning of the Central and Northern Districts of California that Congress expressly authorized section 1983 suits to vindicate violations of IDEA-protected rights. *See Emma C. v. Eastin,* 985 F.Supp. 940, 945 (N.D.Cal.1997); *see also Goleta Union Elementary School District v. Ordway,* 166 F.Supp.2d 1287 (C.D.Cal.2001).

The question whether a statutory violation of IDEA may provide the underlying cause of action in a section 1983 suit has "an unusually rich judicial and legislative provenance." *See Andrew S. v. The School Comm. of the Town of Greenfield,* 59 F.Supp.2d 237, 241 (D.Mass.1999). In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746(1984), the Supreme Court held that the Education of the Handicapped Act ("EHA") (IDEA's predecessor) was the exclusive avenue through which disabled children could pursue claims against state educational service providers. In 1986, in direct response to *Smith,* Congress added § 1415(f) to the EHA as part of the Handicapped Children's Protection Act of 1986. As amended, 20 U.S.C.A. § 1415 provides that:

(f) Effect on other laws

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973[ ], or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsection (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415 (historical notes) (quoting Pub.L. 105–17, Title 11, § 201(a)(2)(c), June 4, 1997). Section 1415(f) clearly states that the provisions of IDEA do not provide the exclusive avenue for redress available to disable children. The text of the amendment is silent, however, as to the application of the subsection to section 1983 actions.

The Northern District of California in *Emma C.* denied a motion by state education officials to dismiss claims under IDEA and section 1983 filed by several disabled students, and held that compensatory damages were available for violations of IDEA. The court reasoned that; absent a clear direction to the contrary by Congress, federal courts are empowered to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute. *Emma C.,* 985 F.Supp. at 945. In *Mrs. W. v. Tirozzi,* the Second Circuit held that parents are entitled to bring a section 1983 action based on alleged violations of IDEA or the Due Process and Equal Protection Clauses of the U.S. Constitution. 832 F.2d at 755.

Other courts have also recognized that a section 1983 action for statutory violation of IDEA should proceed. *See also Cappillino v. Hyde Park Cent. Sch. Dist.,* 40 F.Supp.2d 513, 515, 516 (S.D.N.Y.1999). *Walker v. D.C.,* 969 F.Supp. 794 (D.D.C. 1997) (holding that plaintiffs may bring a section 1983 claim for damages to vindicate their rights under IDEA).

In *W.B. v. Matula,* 67 F.3d 484 (3d Cir.1995), the plaintiff, on behalf of her disabled child, sought damages for the persistent refusal of certain school officials to evaluate and provide necessary educational services. The Third Circuit concluded that: "In enacting § 1415(f), Congress specifically intended that EHA violation could be redressed by § 504 and § 1983 actions, as the legislative history reveals.... Accordingly, § 1983 supplies a private right of action for the instant case." *Matula,* 67 F.3d at 494; *see also Angela L. v. Pasadena Indep. Sch. Dist.,* 918 F.2d 1188, 1193 n. 3 (5th Cir.1990) (stating that Handicapped Children's Protection Act of 1986 rejected the Court's conclusion in *Smith* that the EHA was an "exclusive remedy," and that, consequently, parents may continue to allege violations of § 1983 as well as § 504 of the Rehabilitation Act.)

·Accordingly, the Court finds that the IDEA does not foreclose all remedies under section 1983. As noted in *Emma C.*, in adding Section 1415(f) to IDEA in 1986, "Congress has specifically authorized § 1983 actions predicated on the IDEA." 985 F.Supp. at 945.

### 2. Fourth and Fourteenth Amendment

 Defendants' second and third contentions are that Plaintiffs cannot support claims based upon the Fourth or Fourteenth Amendment.

In *P.B v. Koch*, 96 F.3d 1298 (9th Cir. 1996), the Ninth Circuit declined to resolve whether a student's claim of excessive force by a school official is more appropriately brought under the Fourth Amendment, rather than under substantive due process standards inherent in the Fourteenth Amendment. The Ninth Circuit, however, suggested in a footnote that it might agree with the Seventh Circuit's decision that the Fourth Amendment analysis generally applies in the school context. *See id.* at 1303, n. 4 (citing *Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010, 1016 (7th Cir.1995)). This suggestion was later confirmed by the Ninth Circuit's opinion in *Doe v. State of Hawaii. Dept. of Educ.*, 334 F.3d 906 (9th Cir.2003).

In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court directed courts to analyze claims of excessive force under a more specific constitutional provision, if one applies, rather than the general notion of substantive due process. The Court concluded that in most cases, the appropriate constitutional provision will be either the Fourth Amendment's protection against unreasonable seizures or the Eighth Amendment's ban on cruel and unusual punishments. *Id.* at 394, 109 S.Ct. 1865. The *Graham* rule is grounded in the notion that the specific constitutional provi-

sions provide more guidance to judicial decision makers than the more open-ended concept of due process. *See Armendariz v. Penman*, 75 F.3d 1311, 1319 (9th Cir. 1996). Although *Graham* dealt with the criminal context, the Ninth Circuit has recognized the movement away from substantive due process and toward the Fourth Amendment outside the criminal context as well. *State of Haw. Dept. of Educ.*, 334 F.3d at 908 (citing *Armendariz*, 75 F.3d at 1320).

The Ninth Circuit has also noted that it may be possible for a school official to use excessive force against a student without seizing or searching the student, and that the Fourth Amendment would not apply to such conduct. *State of Haw. Dept. of Educ.*, 334 F.3d at 909. Therefore, the Ninth Circuit has not foreclosed the possibility that under some circumstances, a student's excessive force claim against a school official might be more appropriately analyzed under the Due Process Clause of the Fourteenth Amendment than under the Fourth Amendment. Therefore, the Court finds it appropriate that the Plaintiffs bring their section 1983 action under both the Fourth and the Fourteenth Amendment.

### a. Fourth Amendment

The Fourth Amendment of the United States Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..."

 Defendants contend that Plaintiffs fail to allege facts that meet the definition of a seizure. A constitutional seizure occurs when there is a restraint on liberty to the degree that a reasonable person would not feel free to leave. *United States v. Summers*, 268 F.3d 683, 686 (9th Cir.2001). Defendants continue add-

ing that an educational environment provides certain additional circumstances that must be taken into account in determining if a constitutional seizure has taken place. *See State of Hawaii Dept. of Educ.*, 334 F.3d at 909.

Plaintiffs make several allegations of abuse that Preschooler II endured at the hands of his teacher, Defendant LiSanti. Specifically, Plaintiffs allege that: (1) Preschooler II was made to walk from the bus to the classroom without shoes on, on four occasions; (2) Preschooler II was slapped by Defendant LiSanti, or taken by the hands and forced to slap himself; and (3) Preschooler II was "slammed" in a chair by Defendant LiSanti. Defendants attempt to downplay these allegations arguing that the alleged facts do not amount to a "seizure" but rather a tort, if anything.

The Court disagrees with Defendants. Preschooler II is a four-year old, nonverbal, autistic child who also suffers from tuberous sclerosis. Viewing the alleged facts in favor of Plaintiffs and given the child's circumstances and special needs, if the child were abused at the hands of his teacher, at such a young age, it is reasonable to find that he did not feel free to leave, thus, constituting a seizure.

Defendants final argument is that even if the allegations are considered a seizure, the administrative record is rife with testimony regarding the educational objectives associated with the alleged events. A motion to dismiss is limited to the pleadings. To go beyond the pleadings and consider the testimony Defendants allude to would make this a motion for summary judgment.

### b. Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution provides in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ."

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees citizens the right to be free from "state-imposed violations of bodily integrity." *See Plumeau v. Sch. Dist. #40 of Yamhill County*, 130 F.3d 432, 438 (9th Cir.1997). Generally, however, "state actors may only be held liable under section 1983 for their own acts, and not for the acts of third parties." *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir.2002) (citing *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). "[A] state's failure to protect an individual from private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197, 109 S.Ct. 998. The following are the only exceptions to this rule: 1) the "special-relationship" exception and 2) the "danger-creation" exception. *Huffman v. County of L.A.*, 147 F.3d 1054, 1059 (9th Cir.1998). The first exception does not apply here, however, the second exception applies when the state affirmatively places an individual in a dangerous situation.

To prevail under this theory, Plaintiffs must show that the Defendants "participated in creating a dangerous situation, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it." *Id.* (internal quotation and citation omitted, emphasis in Huffman). Evidence of gross negligence is not sufficient. *Id.*

The nature of Plaintiffs' allegations fall within the parameters of the Fourteenth Amendment and will not be dismissed.

### 3. Fifth Cause of Action-*Monell/Canton* Claims

Plaintiffs' fifth cause of action is brought pursuant to *"Monell/Canton"*

against Defendants CCSD Board and the CCSD. *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Defendants argue that no separate cause of action exists pursuant to the Supreme Court's decisions in *Monell* and *Canton.* Plaintiffs explain that the *Monell/Canton* causes of action against the superiors of Defendant LiSanti as well as Defendants Wyatt, Harley, Green, and Davis, assert independent liability for the failure to train by adopting policies of a discriminatory nature and non-compliance with law. Additionally, Plaintiffs explain that this claim is merely stating that setting discriminatory policies and failure to adequately train subordinates at multiple levels, results in independent liability of those individuals and entities alleged in this cause of action. Plaintiffs' fifth cause of action will not be dismissed.

The Court understands there may be some duplication between the Fourth and Fifth Causes of Action, and simply finds that Plaintiffs' Fifth Cause of Action establishes the allegations against Defendants CCSD Board and the CCSD who were named in Plaintiffs' Fourth Cause of Action-violation of 42 U.S.C. § 1983. While this may be inartful, the Court does not find it improper nor confusing.

### 4. Municipal Liability

Defendants next contention is that Plaintiffs fail to allege facts that could show a policy or custom that would create municipal liability nor have they alternatively alleged facts to show that someone with final policymaking authority has performed or ratified the alleged unconstitutional acts. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *see also Gillette v. Delmore,* 979 F.2d 1342, 1347 (9th Cir. 1992).

■ To impose municipal liability under section 1983 for a violation of constitutional rights, a plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and, (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By and Through Waugh v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Plaintiffs have alleged these four elements in their Amended Complaint. Defendants' motion repeatedly attempts to hold Plaintiffs to what the Court views as a heightened pleading standard. The Supreme Court has held that in section 1983 suits brought against municipalities, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In *Leatherman,* the Court explicitly refused to apply a heightened pleading standard in section 1983 cases brought against municipalities, stating that a standard more stringent than the usual "notice pleading" requirement of Federal Rule of Civil Procedure 8(a) was not contemplated in the rules.

### 5. Qualified Immunity

■ Defendants final arguments regarding Plaintiffs section 1983 claim is that the individual Defendants are entitled to qualified immunity as a matter of law.

■ "Qualified immunity" is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86

L.Ed.2d 411 (1985). "Governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Public school officials are entitled to assert a qualified immunity defense. *Wood v. Strickland,* 420 U.S. 308, 318, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). When an official asserts qualified immunity, "the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). This standard requires a two-step analysis: "1) Was the law governing the official's conduct clearly established and 2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Id.*

The determination of whether the law governing the conduct at issue is clearly established is a question of law for the court. *Id.* at 873. The determination of whether the facts alleged could support a reasonable belief that the defendant's conduct was lawful is also a question for the court. *Id.*

Defendants argue that Plaintiffs' facts cannot support a claim for constitutional deprivation under IDEA, the Fourth or Fourteenth Amendment, nor are the alleged violated rights "clearly established" so that the individual defendants here would have known and understood that the alleged actions were constitutional violations.

The Court disagrees. The Court has found that Plaintiffs have alleged the necessary facts to support a claim for constitutional deprivation under the IDEA, the Fourth and Fourteenth Amendment. The

Court also finds that Plaintiffs' allegations that Defendants violated a clearly established law and that conduct violated a constitutional right is sufficient at this time to defeat the argument that the individual Defendants are entitled to qualified immunity. Accordingly, the individual Defendants will not be dismissed.

## C. Eighth Cause of Action–Negligent Failure to Report

Plaintiffs' Eighth Cause of Action is titled "Negligent Failure to Report Disclose and Remediate" under the Aversive Intervention Law NRS 388.521 et seq, and the Child Abuse Statute 432B.010 et seq against Defendants LiSanti, Wyatt, Garcia, Green, Harley, CCSD, and CCSD Board. Defendants argue that a careful reading of the statutes discloses that the statutes confer no right for a private citizen to bring an action for damages under them. Plaintiffs argue that NRS 388.521 et seq. and NRS 432.010 et. seq. are appropriate standards for claims of negligence, per se.

In *Doe v. Green,* the Nevada District Court specifically decided that a claim for negligence under the reporting statute is, indeed, a viable claim. Nevada has long recognized that the violation of a statute which may be quasi-criminal or penal in nature, gives rise to a claim of negligence *per se. Southern Pac. Co. v. Watkins,* 83 Nev. 471, 435 P.2d 498 (1967). As cited in *Southern Pacific,* citing *Prosser on Torts,* § 35 (3d ed.1964).

The standard of conduct required of a reasonable man may be proscribed by legislative enactment. When a statute provides that under certain circumstances a particular act shall or shall not be done, it may be interpreted as fixing a standard for all members of the community, from which it is negligence to deviate. Within the limits of municipal authority, the same may be true of ordi-

nances. The fact that such legislation is usually penal in character, and carries with it a criminal penalty, will not prevent its use in imposing civil liability, except in a comparatively rare case where the penalty is made payable to the person injured, and clearly is intended in lieu of all other compensation." *See also* Morris, *The relation of Criminal Statutes to Tort Liability,* 1933, 46 Harvard Law Review, 453: Morris, *The role of Criminal Statutes and Negligence Actions,* 1949 Colo. Law Review 21.

*Southern Pac.,* 435 P.2d at 511.

 Whether the statute via the Aversive Intervention Law, NRS 388.521 et. seq. specifically, or as ruled in *Doe v. Green,* for negligent reporting under the Child Abuse Law, NRS 432B, there is a viable cause of action for negligence *per se* in the violation of the mandatory reporting provisions of the statutes. A penal or criminal statute may be used as a standard of care in a negligence action if it has the direct purpose to govern the injury claimed, and is meant to protect the class of persons alleging injury who rely on the statute as a standard of care.

## II. Declaratory Judgment

Embedded within Defendants' Motion to Dismiss (# 09) is a request for Declaratory Judgment. Plaintiffs' Amended Complaint requests that this Court issue a declaration that NRS 388.521 et seq. is relevant, jurisdictional, and must be included with IDEA procedures. Defendants request that this Court issue a ruling regarding the Hearing Officer and SRO's holding that the reporting requirements of NRS 388.521 et seq. are not "state standards" for purposes of IDEA administration.

The Court finds that a request for declaratory judgment is premature as well as procedurally improper considering the request was made in Defendants' motion to dismiss. The Court set forth a 12(b)(6) standard at the beginning of this Order and will remind the parties that a motion to dismiss provides that a court may dismiss a complaint for failure to state a claim upon which relief can be granted. This request is part of the review of the administrative proceedings, as both the Hearing Officer and SRO found that the reporting procedures contained in NRS 388.521 et seq. are not relevant to an analysis under IDEA. Accordingly, the request will be denied.

## III. Motion to Stay Discovery

Considering the Court has denied Defendants' motion to dismiss, Defendants' motion to stay discovery pending rulings on Defendants' pending motions is now moot.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (# 09) is DENIED.

IT IS FURTHER ORDERED that Defendants' Errata (# 11) is Granted and the initial page of Defendants' Exhibit 1 and the final two pages of Defendants' Exhibit 2 shall be removed and stricken from the Exhibits.

IT IS FURTHER ORDERED that Defendants' Motion to Stay Discovery Pending Rulings on Defendants' Motions (# 15) is DENIED as moot.